JAMES N. KRAMER (SBN 154709)
*Email: jkramer@orrick.com*
ALEXANDER K. TALARIDES (SBN 268068)
*Email: atalarides@orrick.com*
SUZETTE J. BARNES (SBN 273116)
*Email: sbarnes@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

Attorneys for Defendants PayPal Holdings, Inc., TIO
Networks ULC, TIO Networks USA, Inc., Daniel H.
Schulman, John D. Rainey, Jr. and John Kunze

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ECKERT and EDWIN BELL, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>PAYPAL HOLDINGS, INC., TIO NETWORKS ULC, TIO NETWORKS USA, INC., DANIEL H. SCHULMAN, JOHN D. RAINEY, JR., HAMED SHAHBAZI, and JOHN KUNZE,<br><br>            Defendants. | Case No. 3:17-cv-06956-EMC<br><br>**DEFENDANTS PAYPAL HOLDINGS, INC., TIO NETWORKS ULC, TIO NETWORKS USA, INC., DANIEL H. SCHULMAN, JOHN D. RAINEY, JR. AND JOHN KUNZE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 20, 2018<br>Time: 1:30 p.m.<br>Judge: Honorable Edward M. Chen<br>Courtroom: 5, 17th Floor |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2
3
4
5
6
7
8
9
10
11
12

**PLEASE TAKE NOTICE** that on September 20, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Edward M. Chen, at 450 Golden Gate Avenue, San Francisco, California, Defendants PayPal Holdings, Inc. ("PayPal"), TIO Networks ULC ("TIO" or "TIO Networks"), TIO Networks USA, Inc. ("TIO USA"), Daniel H. Schulman, John D. Rainey, Jr. and John Kunze (the "Individual Defendants," and together with PayPal, TIO and TIO USA, "Defendants") will and hereby do move the Court for an order dismissing Interim Lead Plaintiffs Michael Eckert and Edwin Bell's ("Plaintiffs") First Amended Class Action Complaint for Violation of the Federal Securities Laws ("FAC"). This motion is made pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on the grounds that the FAC fails to state a claim and fails to comply with Rule 9(b) and the PSLRA.

13
14
15
16

The motion is based on this Notice and the Memorandum of Points and Authorities below; the accompanying Request for Judicial Notice and exhibits attached thereto; the papers on file in the action; argument of counsel at the hearing; and other such matters as may be judicially noticed or come before the Court at the hearing on this matter.

17

## STATEMENT OF ISSUES TO BE DECIDED

18
19
20
21

1.      Whether Plaintiffs' claim against Defendants PayPal, TIO, TIO USA and John Kunze for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder should be dismissed because:

22
23
24

a.      Plaintiffs have failed to allege with the requisite particularity facts showing that the statements cited in the FAC were false or materially misleading when made, and thus have failed to allege the element of "falsity."

25
26
27
28

b.      Plaintiffs have failed to plead with the requisite particularity facts giving rise to a strong inference that Defendants PayPal, TIO, TIO USA and John Kunze made the allegedly false or materially misleading statements with a fraudulent state of mind, and thus have failed to allege the element of

1        "scienter."

2            c.       Plaintiffs have failed to allege with the requisite particularity facts showing

3                     that PayPal's stock price declined because of a disclosure that revealed to

4                     investors the allegedly "true facts" that were supposedly misrepresented or

5                     concealed by Defendants PayPal, TIO, TIO USA and John Kunze, and thus

6                     have failed to allege the element of "loss causation."

7        2.       Whether Plaintiffs' claim against Defendants TIO USA and John Kunze for

8    violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 should also be dismissed for

9    the independent reason that none of the statements cited in the FAC as allegedly being false or

10   materially misleading were made by TIO USA or John Kunze.

11       3.       Whether Plaintiffs' claim against the Individual Defendants for violation of

12   Section 20(a) of the Exchange Act should be dismissed because Plaintiffs have failed to allege a

13   primary violation of Section 10(b) of the Exchange Act.

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ....................................................................................- 1 -

II.    STATEMENT OF FACTS .......................................................................- 3 -

A.    PayPal's Business And Its Acquisition Of TIO ......................................- 3 -

B.    Upon Discovering Security Vulnerabilities On TIO's Platform, PayPal Suspends TIO, Launches An Investigation, And Informs The Market Of The Vulnerabilities .....- 4 -

C.    PayPal Promptly Updates The Market Upon Identifying The Scope And Impact Of The TIO Security Vulnerabilities........................................................- 5 -

D.    The FAC's Allegations ........................................................................- 5 -

III.   ARGUMENT ......................................................................................- 5 -

A.    The FAC Fails To Plead A False Or Misleading Statement ...................- 7 -

B.    The FAC Does Not Allege Any Facts To Support A "Strong Inference" Of Scienter................................................................................................- 10 -

     1.     The Former-Employee Allegations Do Not Create Any Inference of Scienter.................................................................................- 11 -

     2.     Numerous Facts Negate Any Inference Of Scienter .......................- 15 -

     3.     Viewed Holistically, The FAC Does Not Give Rise Even To A Reasonable Inference Of Scienter, Much Less One That Is Cogent And At Least As Compelling As The Alternative Innocent Explanation ....................- 17 -

C.    The FAC Fails To Plead Loss Causation ..............................................- 19 -

D.    The FAC Fails To Plead That TIO USA Or John Kunze Were The "Makers" Of Any False Or Misleading Statement ...................................................- 20 -

E.    Plaintiffs' Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation ......- 22 -

IV.   CONCLUSION ...................................................................................- 22 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accuray, Inc. Sec. Litig.*,
   757 F. Supp. 2d 936 (N.D. Cal. 2010) ....................................................................10

*Alfus v. Pyramid Tech. Corp.*,
   745 F. Supp. 1511 (N.D. Cal. 1990) ......................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................5

*Bodri v. GoPro, Inc.*,
   252 F. Supp. 3d 912 (N.D. Cal. 2017) ..................................................................15

*Brody v. Transitional Hosp. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ........................................................................7, 8, 9, 10

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ......................................................11

*Bruce v. Suntech Power Holdings Co. Ltd.*,
   2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ......................................................22

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ......................................................16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) ........................................................12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................................6

*In re Dot Hill Sys. Corp. Sec. Litig.*,
   594 F. Supp. 2d 1150 (S.D. Cal. 2008) ................................................................17

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ..................................................................................................6

*In re Genzyme Corp. Sec. Litig.*,
   754 F.3d 31 (1st Cir. 2014) ....................................................................................19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..................................................................................21

*In re H & R Block Sec. Litig.*,
   527 F. Supp. 2d 922 (W.D. Mo. 2007), *aff'd*, 580 F.3d 753 (8th Cir. 2009) ............16

*In re Immersion Corp. Sec. Litig.*,
   2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ............................................................................22

*In re Intrexon Corp. Sec. Litig.*,
   2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ............................................................................20

*Janus Capital Grp. v. First Deriv. Traders*,
   564 U.S. 135 (2011) ..................................................................................................20, 21, 22

*Kairalla v. Advanced Med. Optics, Inc.*,
   2008 WL 2879087 (C.D. Cal. June 6, 2008) ..............................................................................9

*Knurr v. Orbital ATK Inc.*,
   294 F. Supp. 3d 498 (E.D. Va. 2018) ......................................................................................18

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
   897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir. 2013) .......................18

*Lapiner v. Camtek, Ltd.*,
   2011 WL 445849 (N.D. Cal. Feb. 2, 2011) ..............................................................................22

*Lefter v. Yirendai Ltd.*,
   2017 WL 2857535 (C.D. Cal. June 20, 2017) ............................................................................8

*In re Lexar Media, Inc. Sec. Litig.*,
   2005 WL 1566534 (N.D. Cal. July 5, 2005) ............................................................................12

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ...................................................................................................................6, 7

*In re Maxwell Techs., Inc. Sec. Litig.*,
   18 F. Supp. 3d 1023 (S.D. Cal. 2014) ......................................................................................13

*McCasland v. FormFactor Inc.*,
   2009 WL 2086168 (N.D. Cal. July 14, 2009) ..........................................................................11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................................................19, 20

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
   2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) .........................................................................16

*Neborsky v. Valley Forge Composite Techs., Inc.*,
   2014 WL 1705522 (S.D. Cal. Apr. 28, 2014) ...........................................................................22

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ...................................................................................................16

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   2018 WL 3126393 (N.D. Cal. June 26, 2018) ....................................................................10, 12

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014)............................................................................................ *passim*

*In re OmniVision Techs., Inc. Sec. Litig.*,
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) .............................................................................8, 9

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
    774 F.3d 598 (9th Cir. 2014)...............................................................................................19

*In re PayPal Holdings, Inc. S'holder Deriv. Litig.*,
    2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .........................................................................8

*Philco Inv., Ltd. v. Martin*,
    2011 WL 500694 (N.D. Cal. Feb. 9, 2011)..........................................................................10

*Pittleman v. Impac Mortg. Holdings, Inc.*,
    2008 WL 4809962 (C.D. Cal. Oct. 6, 2008) .......................................................................12

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    2011 WL 338865 (S.D. Ind. Jan. 28, 2011), *aff'd*, 679 F.3d 952 (7th Cir. 2012) .............16, 19

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008).........................................................................................18, 19

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)...............................................................................................22

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092, 1142 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017), ...............................................................................................................................17

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)............................................................................................9, 15

*Rok v. Identiv, Inc.*,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir. 2018) ...........................................................................................................................................12

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)..................................................................................................9

*Russo v. Bruce*,
    777 F. Supp. 2d 505 (S.D.N.Y. 2011)..................................................................................17

*SEC v. Shanahan*,
    646 F.3d 536 (8th Cir. 2011)................................................................................................18

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999)....................................................................................6, 10, 15

iv

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010).......................................................................16

*In re SolarCity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ...............................................12, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S 308 (2007) ............................................................................ *passim*

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018)..................................................15, 16, 18

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994).........................................................16, 17

*Wozniak v. Align Tech., Inc.*,
    2011 WL 2269418 (N.D. Cal. June 8, 2011) .......................................12

*In re Yahoo! Inc. Sec. Litig.*,
    2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th
    Cir. 2015) .............................................................................................9

*In re Yahoo! Inc. Sec. Litig.*,
    611 F. App'x 387 (9th Cir. 2015) ........................................................9

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014).................................................................17

*Zucco Partners, LLC v. Digimarc Corp.*,
    445 F. Supp. 2d 1201 (D. Or. 2006), *aff'd*, 552 F.3d 981 (9th Cir. 2009)................14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)............................................................ *passim*

**Statutes**

15 U.S.C. § 78j(b) .......................................................................... *passim*

15 U.S.C. § 78t(a) .................................................................................5, 22

15 U.S.C. § 78u-4 ........................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................19, 20

Fed. R. Civ. P. 12(b)(6)............................................................................5

17 C.F.R. § 240.10b-5 ..................................................................... *passim*

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This lawsuit is a paradigm example of the baseless securities litigation that Congress aimed to eliminate with the Private Securities Litigation Reform Act of 1995 ("PSLRA").  In the fall of 2017, PayPal discovered that the data platform of its recent acquisition, TIO Networks, had security vulnerabilities that threatened the personal data of TIO's customers.  Rather than ignore the problem and continue operating its $233 million acquisition, PayPal instead promptly suspended TIO's operations, reported the vulnerabilities to the authorities, commenced an internal investigation with the help of third-party cybersecurity experts, and candidly disclosed its discovery of the vulnerabilities to the public.  Three weeks later, PayPal disclosed that its investigation had identified evidence of unauthorized access to TIO's network and a potential compromise of personally identifiable information for approximately 1.6 million TIO customers.  PayPal has since been diligently working with law enforcement and other relevant authorities, cybersecurity experts, and consumer credit reporting agencies to protect affected TIO customers and their personal data.

PayPal's transparency and proactive efforts to safeguard TIO's customers should be commended.  The plaintiffs' securities class action bar, however, is unwilling to let any good deed go unpunished.  Just five days after PayPal announced the findings of its investigation, Plaintiffs and their counsel filed this lawsuit.  In Plaintiffs' eyes, PayPal's transparency constituted securities fraud in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  Specifically, they assert that PayPal's initial disclosure on November 10 announcing its discovery of security vulnerabilities was fraudulent because PayPal allegedly had by then already identified evidence of unauthorized access to TIO's network and a potential compromise of 1.6 million TIO users' data, but failed to include this information in the announcement.  In other words, Plaintiffs' claim is that PayPal's November 10 announcement should have included the facts that PayPal disclosed three weeks later on December 1.

Plaintiffs' theory of fraud is legally and factually unsustainable.  The FAC does not allege that the November 10 announcement contained any false or untrue statement of fact, but instead

asserts that the announcement was misleading by omission.  For a statement to be misleading, however, it must <u>affirmatively</u> create an impression of a state of affairs that differs in a material way from the one that actually exists.  The November 10 announcement did no such thing—it did not state or suggest that there had been no unauthorized access to TIO's network or that TIO users' data was secure.  To the contrary, it put investors on notice that TIO users' data was <u>not</u> secure.  Moreover, the information disclosed on November 10 was entirely consistent with the allegedly concealed facts that were later disclosed on December 1.  As a matter of law, statements are not misleading when they are not inconsistent with the underlying facts.

Plaintiffs also fall <u>far</u> short of pleading a "strong inference" of fraudulent intent or "scienter."  Section 10(b) and the PSLRA require securities fraud complaints to allege particularized facts creating a powerful inference that the defendants acted with, at a minimum, deliberate recklessness—a state of mind that strongly suggests actual intent to mislead.  The FAC utterly fails in this regard.  The purported statements of three former TIO employees cited in the FAC do not in any way support the notion that Defendants acted with the required state of mind.  Tellingly, <u>none</u> of the former employees—whose purported statements are the sole basis for Plaintiffs' claim—assert that PayPal had determined by November 10 that an unauthorized person or entity had access to the personal data of 1.6 million TIO users, as Plaintiffs allege.

Most fatal to Plaintiffs' effort to plead scienter, however, is that their theory of fraud is illogical—not "cogent and at least as compelling" as the alternative innocent explanation, as required by the PSLRA.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 324 (2007).  If, as Plaintiffs claim, Defendants intended to mislead investors about the security of TIO's platform or TIO users' data, one would have expected them to withhold any adverse facts about the security of TIO's platform while assuring investors that TIO users' data was secure, or to profit from a delay in disclosing the adverse facts.  Yet, as the FAC acknowledges, Defendants did the exact opposite by promptly suspending TIO's operations and exhibiting a level of transparency that is wholly inconsistent with fraudulent intent.  Moreover, the FAC does not allege that any Defendant profited from, or otherwise had a plausible motive for, disclosing on November 10 the discovery of security vulnerabilities on TIO's platform, but concealing the

1   discovery of unauthorized access to TIO's network and a potential compromise of 1.6 million

2   TIO users' data until December 1.

3        Taking the time necessary to get things right is both proper and lawful.  While companies

4   and their executives cannot tell lies, they are entitled to investigate problems for a reasonable time

5   until they have a full story to reveal.  That is exactly what happened here.  Indeed, the <u>only</u> cogent

6   inference that can rationally be drawn from the FAC's allegations is that Defendants did not

7   disclose the scope and impact of the TIO security vulnerabilities on November 10 because they

8   were still investigating the vulnerabilities and did not yet know the extent of the problem.  For

9   these and other reasons discussed below, the FAC should be dismissed with prejudice.

10                    **II.    <u>STATEMENT OF FACTS</u>**[1]

11   **A.    <u>PayPal's Business And Its Acquisition Of TIO</u>**

12        PayPal is a leading technology platform company that enables digital and mobile

13   payments on behalf of consumers and merchants worldwide.  (Ex. A at 4.)  Through its various

14   products, the Company enables consumers and merchants alike to access and move their money,

15   and to purchase or be paid for goods, any time, on any platform and through any device.  (*Id.*)

16        On February 14, 2017, PayPal announced that it had entered into an agreement to

17   purchase TIO Networks for $233 million.  (FAC ¶ 24.)  At the time, TIO[2] was a Canadian cloud-

18   based bill payment processor that offered convenient bill payment services to consumers who do

19   not have affordable access to basic financial services.  (Ex. B at 1, 3.)  TIO integrated with bill

20   issuers' billing systems to accept and process bill payments from financially underserved

21   consumers via self-service kiosk, retail walk-in, mobile, and web solutions.  (*Id.*)  As PayPal's

22   CEO, Daniel Schulman, explained at the time: "Worldwide, more than 2 billion people do not

23   have affordable access to basic financial services . . . .  TIO's digital platform, and physical

24   network of agent locations make paying bills simpler, faster, and more affordable."  (*Id.* at 1.)

---

[1] All "Ex. _" references are to the exhibits attached to Defendants' Request for Judicial Notice.

[2] "TIO" refers to TIO Networks ULC (formerly TIO Networks Corp.), whereas "TIO USA" refers to TIO Networks USA, Inc., a wholly-owned subsidiary of TIO.  (FAC ¶¶ 15-16.)

1    PayPal completed its acquisition of TIO on July 18, 2017.  (FAC ¶ 26.)  TIO thereafter

2  operated as a separate service within PayPal, thereby "advanc[ing] [PayPal's] ability to offer

3  digital financial services to tens of millions of underserved customers."  (Ex. C at 1.)

4  **B.**     **Upon Discovering Security Vulnerabilities On TIO's Platform, PayPal Suspends**
          **TIO, Launches An Investigation, And Informs The Market Of The Vulnerabilities**
5

6    After acquiring TIO, PayPal began conducting data security testing of TIO's platform

7  with a view towards integrating TIO into PayPal's network, a process that takes months to

8  complete.  During this process, PayPal discovered security vulnerabilities on the TIO platform

9  and issues with TIO's data security program.  Rather than ignore the vulnerabilities and continue

10  operating TIO, PayPal instead promptly suspended TIO's operations and reported its discovery of

11  the vulnerabilities to the authorities.  PayPal also commenced an internal investigation with the

12  help of third-party cybersecurity experts to determine the scope and impact of the vulnerabilities,

13  and candidly disclosed its discovery of the vulnerabilities to the public.  As PayPal explained in a

14  press release on November 10, 2017 (the "November 10 PayPal Press Release"):

15          [TIO] has suspended operations to protect TIO's customers.  This suspension of
          services is a result of PayPal's discovery of security vulnerabilities on the TIO
16          platform and issues with TIO's data security program that do not adhere to
          PayPal's information security standards.  TIO is not integrated into PayPal's
17          platform.  The PayPal platform is not impacted by this situation in any way and
          PayPal's customers' data remains secure.
18
          Upon the recent discovery of this vulnerability on the TIO platform, PayPal took
19          action by initiating an internal investigation of TIO and bringing in additional
          third-party cybersecurity expertise to review TIO's bill payment platform. . . .
20
          While we apologize for any inconvenience this suspension of services may cause,
21          the security of TIO's systems and the protection of TIO's customers are our
          highest priorities.  We are working with the appropriate authorities to safeguard
22          TIO customers.

23          Our investigation is ongoing.  We will communicate with TIO customers and
          merchant partners directly as soon as we have more details. Customer updates
24          will also be posted at **www.tio.com**.

25  (Ex. D; FAC ¶ 36.)  A substantially identical announcement was posted at the same time on

26  TIO's website (the "November 10 TIO Website Post," and together with the November 10 PayPal

27  Press Release, the "November 10 Announcement").  (Ex. E; FAC ¶ 37.)

28

**C.**     **PayPal Promptly Updates The Market Upon Identifying The Scope And Impact Of The TIO Security Vulnerabilities**

When PayPal's investigation identified the scope and impact of the security vulnerabilities on the TIO platform, PayPal promptly disclosed this information to the public.  Specifically, on December 1, 2017—just three weeks after the November 10 Announcement—PayPal disclosed in a press release and on TIO's website (the "December 1 Update") that:

> [a] review of TIO's network has identified a potential compromise of personally identifiable information for approximately 1.6 million customers.  The PayPal platform is not impacted in any way, as the TIO systems are completely separate from the PayPal network, and PayPal's customers' data remains secure.
>
> As announced on November 10, PayPal suspended the operations of TIO to protect customer data as part of an ongoing investigation of security vulnerabilities of the TIO platform.  This ongoing investigation has identified evidence of unauthorized access to TIO's network, including locations that stored personal information of some of TIO's customers and customers of TIO billers.  As a result, PayPal is taking steps to protect affected customers. . . .

(Ex. F; FAC ¶ 39.)  On the next trading day, PayPal's stock price declined $4.33, closing at $70.97.  (FAC ¶ 40.)  Approximately four months later, PayPal disclosed that it had decided to not restore TIO's services and that it would wind down TIO's business accordingly.  (*Id.* ¶ 41.)

**D.**     **The FAC's Allegations**

This lawsuit was filed just five days after the December 1 Update.  (ECF No. 1.)  The operative FAC, filed by Plaintiffs Michael Eckert and Edwin Bell, alleges a class period of November 10, 2017 to December 1, 2017, and claims that Defendants PayPal, TIO, TIO USA and John Kunze violated Section 10(b) and Rule 10b-5 because the November 10 Announcement did not disclose that PayPal and TIO had already discovered that an unauthorized person or entity had breached TIO's network and had access to the personal data of 1.6 million TIO users.  (FAC ¶¶ 1, 4, 31-38.)  According to the FAC, the December 1 Update exposed the alleged fraud to the market, causing PayPal's stock price to decline.  (*Id.* ¶¶ 5-6, 39-40.)  The FAC also asserts a claim under Section 20(a) of the Exchange Act against the Individual Defendants.  (*Id.* ¶¶ 65-68.)

## III.     ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

1    556 U.S. 662, 678 (2009).  The Court, however, need not accept as true allegations that contradict

2    documents referred to in the complaint or matters subject to judicial notice, or allegations that are

3    conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Daniels-Hall v. Nat'l*

4    *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

5         The PSLRA imposes two additional exacting pleading requirements in Section 10(b) and

6    Rule 10b-5 cases like this one,[3] both of which must be met for a securities fraud complaint to

7    survive a motion to dismiss.  First, the complaint must specify with particularity (1) each

8    statement alleged to have been false or misleading; (2) the reason(s) why the statement was false

9    or misleading when made; and (3) all facts on which that belief is formed. 15 U.S.C. § 78u-

10   4(b)(1).  "This means that a plaintiff must provide, in great detail, all the relevant facts forming

11   the basis of her belief.  It is not sufficient for a plaintiff's pleadings to set forth a belief that

12   certain unspecified sources will reveal, after appropriate discovery, facts that will validate her

13   claim." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).

14        Second, the complaint must state with particularity facts giving rise to a "strong

15   inference" that the defendants acted with the required state of mind, i.e., scienter.  15 U.S.C. §

16   78u-4(b)(2).  Section 10(b)'s use of the word "manipulative" "connotes intentional or willful

17   conduct designed to deceive or defraud investors." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

18   199 (1976).  Thus, a plaintiff must plead specific facts creating as strong inference that the

19   defendants made false or misleading statements with, "at a minimum, 'deliberate recklessness.'"

20   *In re Silicon Graphics*, 183 F.3d at 977.  In other words, because Section 10(b) scienter requires

21   "some degree of intentional or conscious misconduct," the plaintiff "must state specific facts

22   indicating no less than a degree of recklessness that strongly suggests actual intent" to mislead

23   investors. *Id.* at 977, 979; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).

24        A "strong inference" of scienter is one that is "more than merely plausible or reasonable—

25   it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."

26   _____

27   [3] To prevail on a Section 10(b) and Rule 10b-5 claim, a plaintiff must establish, among other
     things, a false or materially misleading statement (falsity); fraudulent intent (scienter); and a
28   causal connection between the false or materially misleading statement and the plaintiff's loss
     (loss causation). *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

1    *Tellabs*, 551 U.S at 314.  Under this comparative approach, the Court must weigh all competing

2    facts and inferences, including those that weigh against a finding of scienter.  *Id.* at 323-24.  If the

3    facts alleged do not produce an inference of fraud that is cogent and at least as compelling as the

4    competing innocent explanation for the same facts, the complaint fails to plead scienter and must

5    be dismissed.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1006-07 (9th Cir. 2009).

6         As demonstrated below, the FAC does not come close to satisfying the PSLRA's

7    requirements for pleading "falsity" or "scienter."  It also fails to allege that PayPal's stock price

8    declined because of a disclosure that revealed to the market the "truth" that was allegedly

9    misrepresented, and hence also fails to plead the element of "loss causation."  Each of these

10   failures independently compels dismissal.

11   **A.    The FAC Fails To Plead A False Or Misleading Statement**

12        As noted above, the only statement challenged in the FAC is the November 10

13   Announcement, i.e., the November 10 PayPal Press Release and substantially identical November

14   10 TIO Website Post.  (FAC ¶¶ 36-37.)  The FAC does not contend that the Announcement

15   contained any false or untrue statement of fact.  Rather, it asserts that the Announcement was

16   misleading because it "disclosed only a security vulnerability, rather than an actual security

17   breach."  (*Id.* ¶ 38.)  "Specifically," the FAC alleges, "Defendants were already aware, when they

18   disclosed the vulnerability [on November 10, 2017], that someone had breached TIO's security

19   and had access to customer data," and in particular "the personal financial information of 1.6

20   million users."  (*Id.* ¶¶ 4, 31.)

21        Even if Plaintiffs had adequately alleged that Defendants "were already aware" on

22   November 10 that "someone had breached TIO's security and had access to customer data"—and

23   they have not (*see infra* Section III.B.1)—the omission of this information from the November 10

24   Announcement does not render the Announcement actionable.  Section 10(b) and Rule 10b-5

25   "prohibit *only* misleading and untrue statements, not statements that are incomplete."  *Brody v.*

26   *Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  "Disclosure is required under

27   these provisions only when necessary 'to make [] statements made, in the light of the

28   circumstances under which they were made, not misleading.'"  *Matrixx*, 563 U.S. at 44.  And for

1   a statement or omission to be misleading, it "must affirmatively create an impression of a state of

2   affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006.

3   "In other words, 'it is not enough to allege that [a] statement is incomplete; rather, the plaintiff

4   must state facts showing that, due to its incompleteness, the statement affirmatively led the

5   plaintiff in the wrong direction (rather than merely omitted to discuss certain matters).'" *In re*

6   *PayPal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018)

7   (quoting *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013)).

8           Plaintiffs do not even <u>attempt</u> to satisfy this standard.  Indeed, the FAC does not—and

9   cannot—allege that the November 10 Announcement "affirmatively" created the impression that

10  a breach of TIO's network had <u>not</u> occurred or been detected, or that TIO users' data was secure.

11  That is not surprising given that the Announcement did not state or suggest anything about a

12  breach, nor did it state or suggest that TIO's network or users' data were secure.  *See, e.g.*, *Brody*,

13  280 F.3d at 1007 (statement was not misleading because it "did not give the impression that THC

14  had *not* received actual [takeover] proposals from three parties"); *Lefter v. Yirendai Ltd.*, 2017

15  WL 2857535, at *7 (C.D. Cal. June 20, 2017) (statements were not misleading because they

16  "never created the impression that the Draft Measures did *not* put [defendant's] business model at

17  risk").  To the contrary, the Announcement informed the public that PayPal suspended TIO's

18  operations because it had found security vulnerabilities on TIO's platform, and that PayPal was

19  investigating the vulnerabilities and "working with the appropriate authorities" and third-party

20  cybersecurity experts.  (Ex. D; Ex. E at 1-2.)  The Announcement's disclosure that PayPal had

21  taken the drastic step—against its own pecuniary interests—of suspending TIO's operations and

22  was working with law enforcement and cybersecurity experts revealed the gravity of the situation,

23  and forecloses the notion that the Announcement "affirmatively" created a false impression about

24  the security of TIO's network or TIO customers' data.

25          Critically, while the Announcement emphasized that "TIO is not integrated into PayPal's

26  platform" and accordingly assured the public that "PayPal's customers' data remains secure" (Ex.

27  D; Ex. E at 1), it made <u>no</u> such assurance regarding TIO's customers' data—the obvious

28  implication being that TIO's customers' data did <u>not</u> "remain secure."  The Announcement also

1    made clear that PayPal's investigation was in its "early stages" and "ongoing" and that more

2    information would be provided "as soon as [PayPal and TIO] ha[d] more details" (Ex. D; Ex. E at

3    1-2), which "underscores the impression that the state of affairs [was] still in flux, mitigating

4    [any] potential of the [Announcement] to mislead." *In re Yahoo! Inc. Sec. Litig.*, 2012 WL

5    3282819, at *12 (N.D. Cal. Aug. 10, 2012) (statement about company's restructuring that omitted

6    certain adverse facts about the restructuring was not misleading where it stated that the parties'

7    discussions regarding the restructuring were "ongoing"), *aff'd*, 611 F. App'x 387 (9th Cir. 2015).

8            More fundamentally, the information disclosed in the November 10 Announcement was

9    entirely <u>consistent with</u> the allegedly concealed facts that were disclosed three weeks later in the

10   December 1 Update (i.e., that PayPal's investigation had identified evidence of unauthorized

11   access to TIO's network and a potential compromise of 1.6 million TIO users' data).  As a matter

12   of law, "[s]tatements are not misleading where they are 'not [] inconsistent with the underlying

13   true facts.'"  *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *3 (C.D. Cal. June 6,

14   2008) (citation omitted); *see, e.g., In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th

15   Cir. 2012) (press release reporting results of clinical trial was not misleading even though it

16   omitted facts related to certain side effects because "the subsequent release of more extensive

17   information . . . was not inconsistent with the results that originally were reported"); *Brody*, 280

18   F.3d at 1007 (press release stating that defendant had received "expressions of interest" but

19   omitted that defendant had in fact already received actual takeover proposals from three parties

20   was not misleading because it was "entirely consistent with the more detailed explanation of the

21   merger process that [plaintiffs] argue the press release should have included"); *In re Yahoo! Inc.*

22   *Sec. Litig.*, 611 F. App'x 387, 389 (9th Cir. 2015) (statement was not misleading because "the

23   information disclosed was 'entirely consistent with the more detailed explanation'" that plaintiffs

24   claimed should have been disclosed); *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001)

25   (statements were not misleading because the undisclosed "circumstances are not inconsistent with

26   the statements"); *In re OmniVision*, 937 F. Supp. 2d at 1101 (statements were not misleading

27   because they "were consistent both with lead plaintiffs' [view of the facts] . . . and with the

28   opposite conclusion," and "[t]he alleged statements themselves did nothing to affirmatively lead

1  the market toward one conclusion over the other"); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp.

2  2d 936, 946 (N.D. Cal. 2010) (statement was not misleading because later disclosure revealing

3  the allegedly concealed true facts was "not inconsistent with Accuray's prior representation");

4  *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *5 (N.D. Cal. June 26, 2018)

5  (statements were not misleading because "[n]one of the [] omissions contradict the statements").

6    If the November 10 Announcement had included positive statements about the security of

7  TIO's network, stated that there was no evidence of a security breach, or otherwise suggested that

8  TIO customers' data was secure, the Announcement may well have been misleading.  But the

9  November 10 Announcement did no such things, and instead put investors on notice that TIO

10  customers' data was <u>not</u> secure.  *See Brody*, 280 F.3d at 1007 ("Brody, if he read the press

11  release, would have been on notice" of "the distinct possibility" of a merger).  Simply put, even

12  though the November 10 Announcement "did not contain all of the detail Plaintiffs would have

13  liked, it was not misleading."  *Philco Inv., Ltd. v. Martin*, 2011 WL 500694, at *8 (N.D. Cal. Feb.

14  9, 2011) (press release disclosing adverse facts was not misleading because it was consistent with

15  later more detailed disclosure).  It did not "affirmatively create an impression of a state of affairs

16  that differ[ed] in a material way from the one that actually exist[ed]."  *Brody*, 280 F.3d at 1006.

17  **B.** <u>**The FAC Does Not Allege Any Facts To Support A "Strong Inference" Of Scienter**</u>

18    Not only does the FAC fail to plead an actionable misstatement, it also fails to plead facts

19  creating a "strong inference" of scienter, as required by the PSLRA.  As noted above, because

20  Section 10(b) scienter requires "some degree of intentional or conscious misconduct," the

21  plaintiff "must state specific facts indicating no less than a degree of recklessness that strongly

22  suggests actual intent" to mislead investors.  *In re Silicon Graphics*, 183 F.3d at 977, 979.  Thus,

23  when, as here, the plaintiff's claim is based on a failure to disclose, the complaint must allege

24  particularized facts creating a strong inference that the defendants (i) knew of the undisclosed

25  facts, <u>and</u> (ii) knew, or deliberately disregarded an "obvious" risk, that the failure to disclose

26  those facts would mislead investors.  *Id.* at 976-77; *In re NVIDIA*, 768 F.3d at 1053, 1057-58.

27    The FAC falls <u>far</u> short of meeting this requirement.  The former-employee allegations on

28  which Plaintiffs rely do not create even a reasonable inference of scienter, much less one that is

"cogent and at least as compelling" as the opposing inference of nonfraudulent intent. *Tellabs*, 551 U.S. at 324. Moreover, any inference of scienter is overwhelmed by numerous facts that are fundamentally inconsistent with fraudulent intent. When these facts are considered and weighed against the illogical inference of scienter that Plaintiffs' allegations produce, it is evident that the only cogent, and hence most compelling, inference that can rationally be drawn from the facts alleged is that Defendants acted appropriately, without any intent to defraud.

  **1.  The Former-Employee Allegations Do Not Create Any Inference of Scienter**

  Plaintiffs' attempt to plead scienter rests entirely on the accounts of three unnamed former employees of TIO—"FE1," "FE2" and "FE3." (FAC ¶¶ 32-34.) According to Plaintiffs, these FEs "confirmed" that Defendants had "determined [by November 10, 2017] that an unknown but unauthorized person or entity was at that time logged" into TIO's network "and had access to the personal financial information of 1.6 million users," and that "John Kunze told TIO employees of this fact at the same time that he directed that the TIO service be suspended." (*Id.* ¶ 4, 31.)

  "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." *Zucco Partners*, 552 F.3d at 995. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* "[T]he Court may disregard confidential witness statements that are speculative, lack specificity, or are not based on personal knowledge," or that are not actually "indicative of falsity or scienter." *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *18 (N.D. Cal. Mar. 24, 2014) (quotations omitted).

  The FAC's former-employee allegations suffer from various defects, but the most fundamental is that they are not in any way indicative of scienter, or even falsity. None of the FEs provide any facts that contradict anything in the allegedly misleading November 10 Announcement. *See, e.g.*, *McCasland v. FormFactor Inc.*, 2009 WL 2086168, at *5 (N.D. Cal. July 14, 2009) (confidential witness allegations did not support scienter inference because complaint did not "allege that any CW heard or read any specific private statement by a defendant

that contradicted a public statement"); *Solazyme*, 2018 WL 3126393, at *8 (same; confidential

witnesses did not identify any information known to defendants that was "contradicted by [the

allegedly false or misleading] statements"); *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at

*9, *12 (N.D. Cal. June 8, 2011) (same; "none of the confidential witness' allegations contradicts

defendants' statement"); *Pittleman v. Impac Mortg. Holdings, Inc.*, 2008 WL 4809962, at *2

(C.D. Cal. Oct. 6, 2008) (same; "[t]he former employees' [] statements provide no specific facts

that contradict Impac's disclosures"); *In re Lexar Media, Inc. Sec. Litig.*, 2005 WL 1566534, at

*5 (N.D. Cal. July 5, 2005) (same; "it is not clear here that the statements of CW-1 contradict the

statements by Lexar executives").  Moreover, <u>none</u> of the FEs assert that any Defendant knew on

or before November 10, 2017 that someone "had access to the personal financial information of

1.6 million users," as Plaintiffs allege.  And, critically, <u>none</u> of the FEs reveal anything about any

Defendant's state of mind, including whether any Defendant intended to deceive investors.  *See,*

*e.g.*, *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1009 (N.D. Cal. 2017) ("[T]he Ninth

Circuit has held that CW statements cannot create a strong inference of scienter unless the

reporting witness 'has reliable personal knowledge of the defendants' mental state.'"); *Rok v.*

*Identiv, Inc.*, 2017 WL 35496, at *14 (N.D. Cal. Jan. 4, 2017) (disregarding FE statements

because they did not reveal "anything about [defendants'] states of mind"), *aff'd*, 716 F. App'x

663 (9th Cir. 2018); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*

*Inc.*, 2013 WL 6441843, at *13 (N.D. Cal. Dec. 9, 2013) ("None of the confidential witnesses is

alleged to have any [] information as to the state of mind of the individual defendants.").

    For example, the FAC quotes FE1 as stating that at a special meeting on November 10,

2017, TIO employees "were told they suspected or saw that someone had access to confidential

information for customers," and that "[t]hey shut down the service to complete the investigation."

(FAC ¶ 32.)  Putting aside the fact that FE1 does not identify who "they" refers to,[4] she

equivocates between whether "they" merely "suspected" or actually "saw" that "someone had

access to confidential information for customers."  *See Tellabs*, 551 U.S. at 326 ("[O]missions

---

[4] *See, e.g.*, *In re NVIDIA*, 768 F.3d at 1061-62 (disregarding confidential witness that provided
"no context" as "to who made the statement" that plaintiffs contended was probative of scienter).

1   and ambiguities count against inferring scienter").  If whoever FE1 is referring to merely

2   "suspected" that "someone had access to confidential information for customers," as FE1's

3   statement suggests, then those unnamed individuals obviously lacked actual knowledge of a data

4   breach.  In any event, FE1's statements do not support Plaintiffs' allegation that Defendants had

5   determined by November 10 that someone "had access to the personal financial information of

6   1.6 million users," much less the allegation that "John Kunze told TIO employees of this fact at

7   the same time that he directed that the TIO service be suspended."  (FAC ¶ 4.)  If anything, FE1's

8   statement that "[t]hey shut down the service to complete the investigation" supports the <u>opposite</u>

9   conclusion, i.e., that Defendants were still investigating the security vulnerability and did not yet

10  know the scope or impact of the problem.

11          With respect to FE2, the FAC alleges that "[s]he stated that in early November she was

12  waiting for an all-hands TIO meeting in their conference room when she was summoned back to

13  a different office to hear an announcement from [John] Kunze, telling that TIO had actually been

14  breached."  (*Id.* ¶ 33.)  This allegation, however, does not quote what FE2 actually said, but

15  instead purports to paraphrase what she said.  That, alone, raises a red flag about the reliability of

16  the allegation.  *See In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1034 (S.D. Cal.

17  2014).  But even if FE2 really did say that Mr. Kunze announced that "TIO had actually been

18  breached," her "statement" is too vague and unspecific, and betrays a lack of personal knowledge

19  regarding when and what Mr. Kunze knew.  What was the nature of the "breach" that Mr. Kunze

20  purportedly announced in "early November"?  (The term "breach" is very broad and generic and

21  includes even minor incidents that do not in any way compromise confidential data.)  Did Mr.

22  Kunze know or announce the scope and impact of this undefined "breach" in "early November,"

23  including that an "unauthorized person" had "access to the personal financial information of 1.6

24  million users," as Plaintiffs allege?  FE2's "statement" does not answer any of these questions.

25  *See Tellabs*, 551 U.S. at 326 ("[O]missions and ambiguities count against inferring scienter").

26          The FAC also quotes FE2 as stating that PayPal had discovered "someone in the system"

27  during a security analysis of the TIO network (FAC ¶ 33), but nowhere does the FAC explain

28  what this means.  Even if PayPal had discovered "someone in the system," it does not necessarily

1    follow that PayPal had also discovered that "someone" had "access to the personal financial

2    information of 1.6 million users," which is what Plaintiffs claim Defendants knew on November

3    10, 2017.  (*Id.* ¶ 4.)  FE2 certainly does not claim that anyone at PayPal or TIO had made such a

4    discovery on or before that date.

5           As for FE3, the FAC alleges that she "stated that employees of TIO learned of a security

6    breach in early November when TIO announced it had discovered a vulnerability" and that "[i]t

7    was her understanding that was also the time the breach was discovered."  (*Id.* ¶ 34.)  Again, this

8    allegation does not quote what FE3 actually said, but instead purports to paraphrase what she

9    said.  In any event, her "statements," like FE2's purported statements, are too vague and

10   unspecific, and likewise betray a lack of personal knowledge regarding when and what

11   Defendants knew.  From whom or how did TIO employees learn of a "security breach" in "early

12   November"?  Did TIO employees learn the nature of this "security breach" in "early November"?

13   (As noted above, the term "security breach" is very broad and generic.)  Did Mr. Kunze or

14   anyone else know or announce the scope and impact of this "security breach" in "early

15   November," including that an "unauthorized person" had "access to the personal financial

16   information of 1.6 million users," as Plaintiffs allege?  Like FE2's purported statements, FE3's

17   "statements" shed no light on any of these questions.

18          FE3 also appears to lack personal knowledge regarding when this undefined "security

19   breach" was discovered.  She states that it was "her understanding" that the breach was

20   discovered at the same time TIO announced it had discovered a vulnerability, but provides no

21   facts to show that "her understanding" is based on personal knowledge.  *See, e.g.*, *Zucco*

22   *Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1207 (D. Or. 2006) ("CW6 alleges he

23   'understood that some employees were improperly capitalizing their labor on contracts.'  This

24   does not appear to be based on CW6's personal knowledge but instead on something more like

25   gossip or speculation"), *aff'd*, 552 F.3d 981 (9th Cir. 2009).

26          In sum, <u>none</u> of the FEs provide <u>any</u> information suggesting that Defendants intended to

27   mislead investors, or knew (or deliberately disregarded an obvious risk) that omitting from the

28   November 10 Announcement that "someone" was "in the TIO network," without yet knowing the

1    nature, scope, or impact of this potential "breach," would mislead investors. Accordingly,

2    Plaintiffs' former-employee allegations do not create even a slight inference, much less the

3    requisite strong inference, that Defendants acted with the required state of mind. *See In re Silicon*

4    *Graphics*, 183 F.3d at 977, 979 (scienter requires "intentional" or "conscious" misconduct; a

5    "deliberate recklessness" that "strongly suggests actual intent"); *In re NVIDIA*, 768 F.3d at 1059

6    ("[T]hese [CW] allegations do not give rise to a strong inference that Huang and NVIDIA acted

7    with intent to mislead investors, or recklessly disregarded an obvious danger of misleading

8    investors, by not disclosing information regarding the Material Set Problem prior to July 2008.").

9            **2.    Numerous Facts Negate Any Inference Of Scienter**

10           The fact that Plaintiffs' former-employee allegations by themselves do not create a strong

11   inference of scienter is dispositive, as the FAC contains no other factual allegations going to

12   scienter. Plaintiffs' failure to plead scienter, however, is further underscored when the numerous

13   facts undermining any inference of scienter are taken into account, as required by the PSLRA.

14           First, Plaintiffs do not allege that any Defendant profited from, or otherwise had a

15   plausible motive for, disclosing on November 10, 2017 the discovery of security vulnerabilities

16   on TIO's platform, but concealing the discovery of unauthorized access to TIO's network and a

17   potential compromise of 1.6 million TIO users' data until December 1, 2017. There is, for

18   example, no allegation that any Individual Defendant sold PayPal stock during the three-week

19   putative class period. This absence of any motive for the alleged fraud undermines any inference

20   of scienter. *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("Neither Rive

21   nor Kelly are alleged to have sold any SolarCity stock during the Class Period, and we have

22   recognized that a lack of stock sales can detract from a scienter finding." (citing *In re Rigel*, 697

23   F.3d at 884-85)); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) ("[T]here is no

24   allegation of improper stock sales by any individual defendant during the class period. While the

25   absence of a motive allegation is not fatal, it may significantly undermine a plaintiff's theory of

26   fraud." (quotations omitted)).

27           Second, the fact that Defendants voluntarily suspended TIO's operations when they

28   discovered the security vulnerabilities, and initiated an investigation to determine the scope and

- 15 -

1   impact of the vulnerabilities, belies the notion that it was Defendants' objective to hide the

2   problems related to the security of TIO's platform or TIO users' data, and further undermines any

3   inference of scienter.  *See, e.g.*, *Plumbers and Pipefitters Local Union 719 Pension Fund v.*

4   *Zimmer Holdings, Inc.*, 2011 WL 338865, at *22 (S.D. Ind. Jan. 28, 2011) ("[T]he company's

5   investigation and willingness to recall its products bely Plaintiff's claims that it was Defendants'

6   objective to hide problems related to the Dover facility"), *aff'd*, 679 F.3d 952 (7th Cir. 2012);

7   *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) ("Ordering an investigation as soon

8   as they learned [of a potentially serious problem] . . . was 'a prudent course of action that

9   weakens . . . an inference of scienter.'"); *In re H & R Block Sec. Litig.*, 527 F. Supp. 2d 922, 930

10  (W.D. Mo. 2007) ("[T]he fact of the investigation . . . negates an inference of an intent to deceive

11  the investing public."), *aff'd*, 580 F.3d 753 (8th Cir. 2009); *City of Brockton Ret. Sys. v. Avon*

12  *Prods., Inc.,* 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 29, 2014) ("[T]he fact that Avon

13  commenced an internal investigation tends to undermine any inference of scienter.").

14          Third, the fact that Defendants disclosed their discovery of security vulnerabilities in the

15  first place, and then just three weeks later further disclosed that their investigation identified

16  evidence of unauthorized access to TIO's network and a potential compromise of 1.6 million TIO

17  users' data, is wholly inconsistent with an intent to defraud investors regarding the security of

18  TIO's platform or TIO users' data, and undermines any inference of scienter even further.  *See,*

19  *e.g.*, *Webb*, 884 F.3d at 856 (fact that defendants "were forthcoming with the public" regarding

20  certain adverse facts undermined inference of scienter); *In re Worlds of Wonder Sec. Litig.*, 35

21  F.3d 1407, 1425 (9th Cir. 1994) ("defendants' provision of adverse information to the public by

22  way of disclosure negates an inference that they acted with an inten[t] to defraud" (quotations

23  omitted)); *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520 (N.D. Cal. 1990) ("It is

24  implausible that a person bent on fraud would provide adverse information to investors"

25  (quotations omitted)); *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, 2009 WL 3112574,

26  at *14 (C.D. Cal. Sept. 25, 2009) ("The public disclosure of the company's problems and its

27  efforts to address those problems . . . weighs against a conclusion that . . . Defendants[]

28  knowingly or recklessly made misleading public statements."); *Neiman v. Bulmahn*, 854 F.3d

- 16 -

741, 751 (5th Cir. 2017) ("It would have made little sense for Defendants to simultaneously disclose to, and mislead, the public about ATP's [liquidity problems].  For this reason, '[Defendants'] transparency . . . further negates the inference of scienter.'"); *Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874, 892 (4th Cir. 2014) ("The fact that MuniMae continued to update investors about newly discovered weaknesses tends to negate an inference that the defendants acted with an intent to defraud."); *Russo v. Bruce,* 777 F. Supp. 2d 505, 526 (S.D.N.Y. 2011) ("Crystallex made known publicly many of the hiccoughs . . . seized upon in the Complaint.  This candidness undermines an inference of fraudulent intent.").

<u>Fourth</u>, and finally, PayPal made detailed disclosures regarding the risk of cyberattacks and security breaches, and expressly warned investors, among other things, that:

- PayPal's "information technology and infrastructure may be vulnerable to cyberattacks or security breaches, and third parties may be able to access [its] customers' personal or proprietary information . . . ."

- "Although [PayPal] ha[s] developed systems and processes that are designed to protect [its] data and customer data and to prevent data loss and other security breaches . . . these security measures cannot provide absolute security."

- "Any actual or perceived breach of [PayPal's] security could interrupt [its] operations, result in [its] systems or services being unavailable, result in improper disclosure of data, materially harm [its] reputation and brands, result in significant legal and financial exposure, lead to loss of customer confidence in, or decreased use of, [its] products and services, and adversely affect [its] business and results of operations."

(Ex. A at 15.).  Such "[r]obust disclosure of risks and problems further 'negates an inference that the company acted with intent to defraud.'"  *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1142 (E.D. Wash. 2013), *aff'd,* 691 F. App'x 393 (9th Cir. 2017); *In re Worlds of Wonder*, 35 F.3d at 1425 (finding that detailed risk disclosure negated inference of scienter); *In re Dot Hill Sys. Corp. Sec. Litig.,* 594 F. Supp. 2d 1150, 1160 (S.D. Cal. 2008) ("Disclosing the precise risks at issue negate[s] an inference of scienter." (quotations omitted)).

### 3.    Viewed Holistically, The FAC Does Not Give Rise Even To A Reasonable Inference Of Scienter, Much Less One That Is Cogent And At Least As Compelling As The Alternative Innocent Explanation

Plaintiffs' failure to plead scienter is even more glaring when examined under *Tellabs*' holistic analysis, which requires the Court to assess the FAC's allegations holistically, and then weigh any inference of scienter that can rationally be drawn from the allegations against any

1  plausible opposing inference.  551 U.S. at 323-24, 326.  Under this "inherently comparative"

2  inquiry, a complaint will survive "only if a reasonable person would deem the inference of

3  scienter cogent and at least as compelling as any opposing inference one could draw from the

4  facts alleged."  *Id.* at 323-24.  "Even if a set of allegations may create an inference of scienter

5  greater than the sum of its parts, it must still be at least as compelling as an alternative innocent

6  explanation."  *Zucco Partners*, 552 F.3d at 1006.

7        The FAC's allegations, viewed holistically, do not create even a <u>reasonable</u> inference of

8  scienter, much less a cogent one.  If Defendants intended to mislead investors about the security

9  of TIO's platform or TIO users' data, one would have expected them to withhold any adverse

10  facts about the security of TIO's platform while assuring investors that TIO users' data was

11  secure, or to profit from a delay in disclosing the adverse facts.  Yet, as discussed above, the

12  FAC's allegations demonstrate that Defendants did the exact opposite.  *See Webb*, 884 F.3d at

13  856 (holding that inference of scienter was not compelling where plaintiff's "allegations

14  regarding [defendants'] behavior are not consistent with scienter").  Simply put, Defendants'

15  "transparency is not the behavior one would expect from an intentional or severely reckless

16  violator of the securities laws."  *SEC v. Shanahan*, 646 F.3d 536, 545 (8th Cir. 2011); *see also*

17  *Knurr v. Orbital ATK Inc.*, 294 F. Supp. 3d 498, 505 (E.D. Va. 2018) ("Were an individual

18  engaging in behavior he or she knew was fraudulent, one would expect to see attempts to conceal

19  the behavior, not widespread reporting thereof."); *Kuriakose v. Fed. Home Loan Mortg. Corp.*,

20  897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) ("It defies logic to conclude that executives who are

21  seeking to perpetrate fraudulent information upon the market would make such [adverse]

22  disclosures."), *aff'd*, 543 F. App'x 72 (2d Cir. 2013).  Moreover, the fact that none of the

23  Individual Defendants are alleged to have sold any of their PayPal stock "meant that they stood to

24  <u>lose</u> a lot of money if the value of [PayPal's] stock fell" as a result of the alleged fraud.  *Pugh v.*

25  *Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008) (emphasis added).  Against this backdrop, any

26  inference of scienter that one could possibly draw from the FAC's allegations is <u>illogical</u>.

27        Conversely, the opposing innocent inference is compelling and <u>far</u> outweighs any possible

28  inference of scienter.  While companies and their executives cannot tell lies about problems that

1    arise, they "are entitled to investigate for a reasonable time, until they have a full story to reveal."

2    *Id.* (quotations omitted).  Here, the <u>only</u> cogent inference that can <u>rationally</u> be drawn from the

3    FAC's allegations is that Defendants did not disclose the scope and impact of the TIO security

4    vulnerabilities in the November 10 Announcement because they were still investigating the

5    vulnerabilities and did not yet know the extent of the problem.  *See In re NVIDIA*, 768 F.3d at

6    1065 ("Although there is some slight support for an inference that NVIDIA . . . acted with intent

7    to deceive . . . a more compelling inference is that NVIDIA did not disclose [the product defect

8    earlier] because it was investigating the extent of the problem").  This inference against scienter

9    becomes even more cogent given the fact that Defendants disclosed the findings of their

10    investigation a mere <u>three weeks</u> later.  *See, e.g.*, *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 44

11    (1st Cir. 2014) (holding that innocent inference was more compelling than scienter inference

12    where allegedly concealed scope of problem was "at best, only partially known to defendants"

13    and "the results of [their] investigation were relatively promptly disclosed"); *Pugh*, 521 F.3d at

14    695 (same; "As the investigation continued and more information became available, the

15    defendants disclosed it to the public . . . within a reasonable time"); *Zimmer Holdings*, 2011 WL

16    338865, at *22 ("The inference against scienter becomes even more cogent . . . given the fact that

17    Defendants made a timely disclosure of the results of these investigations." (quotations omitted)).

18    **C.**    <u>**The FAC Fails To Plead Loss Causation**</u>

19          In addition to failing to allege falsity and scienter, the FAC also fails to allege loss

20    causation.  This element requires a plaintiff to establish a causal connection between the alleged

21    misstatement and her loss.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062

22    (9th Cir. 2008).  When, as here, a plaintiff's loss causation theory is based on market revelation of

23    the alleged fraud (FAC ¶¶ 5-6, 39-40), "the complaint must allege that the defendant's 'share

24    price fell significantly after the truth became known.'"  *Metzler*, 540 F.3d at 1062.  And because

25    Rule 9(b) applies to the element of loss causation, *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,

26    774 F.3d 598, 605 (9th Cir. 2014), the plaintiff must plead this theory <u>with particularity</u>.

27          Here, the alleged "truth" that was supposedly misrepresented is the <u>timing</u> of Defendants'

28    discovery of the facts disclosed in the December 1 Update.  According to the FAC, Defendants

"fundamentally misrepresented the timeline of events, rather than discovering a vulnerability in November, shutting down the service, and subsequently finding a breach, [Defendants] actually had already discovered a breach by the time they announced the vulnerability."  (FAC ¶ 35.)  The FAC, however, does not allege <u>any</u> facts plausibly suggesting that the market ever became aware of this alleged "truth."  *See In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *7 (N.D. Cal. Feb. 24, 2017) ("To establish loss causation, Plaintiff must allege that [the] stock declined because of a 'corrective disclosure' that revealed to the market the 'truth' of the alleged misstatements.").  The December 1 Update did <u>not</u> disclose, or even suggest, that Defendants had, as of the November 10 Announcement, identified evidence of unauthorized access to TIO's network and a potential compromise of 1.6 million TIO users' data.  (Ex. F.)

Thus, because the December 1 Update cannot plausibly be read to reveal the allegedly misrepresented "true" timeline of events, and the FAC does not otherwise allege any specific facts in accordance with Rule 9(b) plausibly suggesting that investors ever became aware of the allegedly "true" timeline of events or that PayPal's stock price declined because the allegedly "true" timeline of events became known, Plaintiffs fail to allege loss causation.  *See Metzler*, 540 F.3d at 1059, 1063 (plaintiff failed to plead loss causation where press releases could not "be reasonably read to reveal [the truth that was allegedly misrepresented] by Corinthian, and the TAC does not otherwise adequately plead that these releases did so").

**D.**     **The FAC Fails To Plead That TIO USA Or John Kunze Were The "Makers" Of Any False Or Misleading Statement**

Plaintiffs' Section 10(b) and Rule 10b-5 claim against TIO USA and John Kunze also fails for the independent reason that these Defendants are not alleged to have "made" any alleged misstatement.  To be liable for violation of Section 10(b) and Rule 10b-5, a defendant "must have 'made the'" alleged misstatement.  *Janus Capital Grp. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011).  *Janus* held that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id.* at 142.  "One who prepares or publishes a statement on behalf of another is not its maker."  *Id.*

Plaintiffs do not allege that TIO USA was the maker of the November 10 PayPal Press Release.  Nor could they do so—the Release was issued by PayPal, TIO USA's indirect parent company (FAC ¶¶ 16, 36), and so PayPal had ultimate authority over the Release.  The only other alleged misstatement is the substantially identical November 10 TIO Website Post.  But as the FAC acknowledges, and as a review of the Post itself shows, the Post was made by TIO, not TIO USA, which is a separate and distinct legal entity.  (*Id.* ¶ 37; Ex. E at 2 (attributing Post to "TIO Networks Corp.," which the FAC at ¶ 15 acknowledges is TIO).)  Plaintiffs do not, and cannot, allege that TIO USA, a subsidiary of TIO (FAC ¶ 16), had ultimately authority over the Post.

Mr. Kunze likewise is not the maker of the alleged misstatements.  After *Janus*, courts have held that an individual defendant is a maker of a statement only if: (i) the defendant's "signature or name appeared in the [statement] in the sense of an attribution"; (ii) the defendant orally "delivered the statements . . . himself"; or (iii) the defendant "*actually exercised* control"—as opposed to "*could have* exercised control"—"over the content of the [statement] and whether and how [it was] communicated."  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015).  A person who merely influenced, helped create or supplied false information for the relevant statements does not mean that such person had "ultimate authority" over the statements that were then communicated to the public.  *In re SolarCity*, 274 F. Supp. 3d at 1007.

There is no allegation that Mr. Kunze spoke any alleged misstatement, and he did not sign, nor does his name appear in, the November 10 PayPal Press Release or TIO Website Post.  (Exs. D-E.)  Moreover, Plaintiffs do not allege any specific facts to show that Mr. Kunze—a Vice President of PayPal and President of TIO USA (not TIO) (FAC ¶ 20)—actually exercised control and had ultimate authority over the content of either November 10 Announcement, including whether and how either Announcement would be communicated.  Instead, Plaintiffs lump him with all the other Defendants and allege that "[b]ecause of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PayPal, TIO, and TIO USA disseminated in the marketplace during the Class Period."  (*Id.* ¶ 67; *see also id.* ¶ 58.)  Even before *Janus*, such boilerplate, position-based group allegations were insufficient to plead that an individual

1   was the maker of an unattributed corporate statement.  *See, e.g.*, *In re Immersion Corp. Sec.*

2   *Litig.*, 2011 WL 871650, at *3 (N.D. Cal. Mar. 11, 2011) (rejecting conclusory allegations that

3   individual defendants "controlled and/or possessed the authority to control the contents of [the

4   company's] reports, press releases").  Indeed, "the majority of district courts within the Ninth

5   Circuit[] have concluded that group pleading is no longer viable under the PSLRA."  *Lapiner v.*

6   *Camtek, Ltd.*, 2011 WL 445849, at *3 (N.D. Cal. Feb. 2, 2011) (quotations omitted).

7          As the Ninth Circuit has recognized, *Janus* "sets the pleading bar even higher in private

8   securities fraud actions seeking to hold defendants primarily liable for the misstatements of

9   others."  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011).  In light of *Janus*,

10  therefore, Plaintiffs' conclusory allegations regarding Mr. Kunze's purported authority over the

11  alleged misstatements are plainly insufficient.  *See, e.g.*, *Neborsky v. Valley Forge Composite*

12  *Techs., Inc.*, 2014 WL 1705522, at *6 (S.D. Cal. Apr. 28, 2014) ("Plaintiff relies solely on

13  Wilhide's role within the company to argue that the statements of Valley Forge can be attributed

14  to him.  This is insufficient under *Janus*"); *Bruce v. Suntech Power Holdings Co. Ltd.*, 2013 WL

15  6843610, at *4 (N.D. Cal. Dec. 26, 2013) ("To the extent plaintiffs seek to hold King liable for []

16  statements by [the company] on the basis of his position as CFO, the conclusory allegations that

17  he 'had the authority to and did control the making of [those] statements' 'by virtue of [his]

18  responsibilities and activities as [CFO] . . .' lack the requisite specificity").

19  **E.     Plaintiffs' Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation**

20          Under Section 20(a) of the Exchange Act, an individual defendant will be liable for

21  securities fraud if the plaintiff establishes a primary violation of Section 10(b) and the individual

22  defendant exercised actual control over the primary violator.  *See* 15 U.S.C. § 78t(a).  Section

23  20(a) claims may thus be dismissed summarily "if a plaintiff fails to adequately plead a primary

24  violation of [S]ection 10(b)."  *Zucco Partners*, 552 F.3d at 990.  For a host of reasons discussed

25  above, Plaintiffs fail to adequately plead a primary violation of Section 10(b).  Accordingly,

26  Plaintiffs' Section 20(a) claim against the Individual Defendants must likewise be dismissed.

27                          **IV.     CONCLUSION**

28          For these reasons, the FAC should be dismissed with prejudice.

1

2   Dated: July 13, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4                                           _____/s/ James N. Kramer_____
                                                    James N. Kramer
5                                           Attorneys for Defendants PayPal Holdings, Inc., TIO
                                            Networks ULC, TIO Networks USA, Inc., Daniel H.
6                                           Schulman, John D. Rainey, Jr. and John Kunze

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28