**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:     (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page* -

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ECKERT and EDWIN BELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAYPAL HOLDINGS, INC., TIO NETWORKS ULC, TIO NETWORKS USA, INC., DANIEL H. SCHULMAN, JOHN D. RAINEY JR., and JOHN KUNZE,<br><br>Defendants | Case No. 3:17-cv-06956<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Lead Plaintiffs Michael Eckert and Edwin Bell ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' second amended complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press

1

releases published by and regarding PayPal Holdings, Inc. ("PayPal" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired PayPal securities between November 10, 2017 and December 1, 2017, both dates inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. PayPal operates as a technology platform company that provides online payment systems through a variety of services on behalf of consumers and merchants. Founded in 1998, the Company is headquartered in San Jose, California. The Company's common stock trades on the NASDAQ Global Stock Market ("NASDAQ") under the ticker symbol "PYPL."

3. On February 14, 2017, PayPal announced an agreement to purchase TIO Networks Corporation for $233 million (the "TIO Acquisition"). TIO is a bill-pay management company that processed roughly $7 billion in bill payments on behalf of fourteen (14) million customers in 2016. On July 18, 2017, PayPal announced the completion of the TIO Acquisition.

4. On November 10, 2017, PayPal suspended its TIO services, pending a security review, stating that it had discovered security vulnerabilities on the TIO platform and that the TIO data security program did not meet PayPal's standards. This statement was misleading because in fact, PayPal and TIO did not merely discover a vulnerability, but in reality discovered an actual data breach. Specifically, they determined that an unknown but unauthorized person or entity was at that time logged in to TIO's networks and had access to the personal financial information of 1.6 million users. PayPal executive (and Defendant herein) John Kunze told TIO employees of this fact at the same time that he directed that the TIO service be suspended.

5.  On December 1, 2017, post-market close, PayPal disclosed that personal information—including names, addresses, bank-account details, and Social Security numbers—for roughly 1.6 million TIO users had been potentially compromised due to the previously concealed breach.

6.  On this news, PayPal's share price fell $4.33, or 5.75%, to close at $70.97 on December 4, 2017, the following trading day.

7.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.  The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.  Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). PayPal's principal executive offices are located within this Judicial District.

11.  In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12.  Co-Lead Plaintiff Michael Eckert, as set forth in the Certification previously filed (Dkt. No. 11-2), purchased PayPal securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.  Co-Lead Plaintiff Edwin Bell, as set forth in the Certification previously filed (Dkt. No. 15-2), purchased PayPal securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14. Defendant PayPal is incorporated in Delaware, and the Company's principal executive offices are located at 2211 North First Street, San Jose, California 95131. PayPal's common stock trades on the NASDAQ under the ticker symbol "PYPL."

15. Defendant TIO Networks ULC is incorporated in British Columbia, Canada, and the Company's principal executive offices were located at 250 Howe Street, Vancouver, British Columbia, Canada, V6C 3R8. TIO is a wholly owned subsidiary of PayPal. Prior to its acquisition, it bore the legal name TIO Networks Corporation.

16. Defendant TIO Networks USA, Inc, ("TIO USA") is a Washington corporation with its principal executive offices located at 2211 North First Street, San Jose, CA, 95131. TIO USA is a wholly owned subsidiary of TIO and an indirect wholly owned subsidiary of PayPal.

17. Defendant Daniel H. Schulman ("Schulman") has served as President, Chief Executive Officer ("CEO"), and Director of PayPal since July 2015, and as a director since 2015. Previously, Defendant Schulman had served as the President and CEO-Designee of PayPal from September 2014 until July 2015. From August 2010 to August 2014, Defendant Schulman served as Group President, Enterprise Group of American Express Company. Defendant Schulman was President of the Prepaid Group of Sprint Nextel Corporation, a cellular phone service provider, from November 2009 until August 2010, when Sprint Nextel acquired Virgin Mobile, USA, another cellular phone service provider. In addition to PayPal, Defendant Schulman serves on the board of directors of both Flex Ltd. and Symantec Corporation. Throughout the Class Period, Defendant Schulman was responsible for the day-to-day operations of PayPal, as well as its subsidiaries, in his capacity as CEO.

18. Defendant John D. Rainey Jr. ("Rainey") has served as Chief Financial Officer ("CFO") and Executive Vice President, Global Customer Operations of PayPal since January 2018. From September 2016 to January 2018, Defendant Rainey served as Executive Vice President, CFO. From August 2015 to September 2016, he served as Senior Vice President, CFO. From April 2012 to July 2015, Defendant Rainey was Executive Vice President and CFO of United Continental Holdings, Inc., an airline holding company. Defendant Rainey also served as CFO and Executive Vice President at United Airlines, Inc., an airline company, from April 2012 to August 2015. From October 2010 to April 2012, Defendant Rainey was Senior Vice President of Financial Planning and Analysis at United

Continental Holdings, Inc.  Throughout the Class Period, Rainey was responsible for the day-to-day operations of PayPal as well as its subsidiaries in his capacity as CFO.

19.     Defendant John Kunze ("Kunze") has served as PayPal's Vice President of Global Consumer Products and the head of Xoom, a PayPal subsidiary, from November 2015 to the present.  Prior to that, Defendant Kunze was CEO of Xoom from June 2016 until November 2015, when Xoom was acquired by PayPal.  Defendant Kunze previously served as CEO of Plumtree software from 1998 to 2005.  Defendant Kunze was charged with supervising the integration of TIO into PayPal.  Defendant Kunze oversaw the integration of TIO into PayPal on a day-to-day basis.  Defendant Kunze was also the President of TIO USA.

20.     The Defendants referenced above in ¶¶17-19 are sometimes referred to herein collectively as the "Individual Defendants."

## PayPal's Acquisition of TIO

21.     PayPal is a technology company that offers a variety of services in the online payment industry.  PayPal's core product is an online money transfer system designed to be an alternative to checks or money orders.  This system allows customers to make payments online without having to entrust their credit card or bank account information to the merchant.  Instead, customers provide that information directly to PayPal.  Consequently, customers use PayPal because it is perceived as much safer than a credit card.  Therefore, PayPal's reputation for data security is highly important to the company.  PayPal noted in its annual report – filed with the SEC on Form 10-K – for Fiscal Year 2016 that "we believe that PayPal is a particularly attractive target for [data] breaches and attacks due to our name and brand recognition and the widespread adoption and use of our products and services." The 10-K also stated that "[a]ny actual or perceived breach of our security could interrupt our operations, result in our systems or services being unavailable, result in improper disclosure of data, materially harm our reputation and brands, result in significant legal and financial exposure, lead to loss of customer confidence in, or decreased use of, our products and services, and adversely affect our business and results of operations. In addition, any breaches of network or data security at our customers, partners or vendors (including data center and cloud computing providers) could have

similar negative effects."

22.  Defendant Schulman has repeatedly emphasized this fact in public statements, telling the Hindu Business Line, on November 19, 2017, that "[m]oney is a very personal part of our lives and customers want an experience that makes the management and movement of money simpler and more convenient, but also ensures that the transaction is secure. Fintech is not like other tech, because it involves somebody's money and, therefore, must be secure. As a customer champion company, PayPal works hard to put our customers and their needs at the heart of everything we do. And because of this, we firmly believe we will continue to be successful". In addition, at a talk on April 7, 2017 before the Council on Foreign Relations, Defendant Schulman stated that PayPal was subject to over a billion cybersecurity attacks per year. Defendant Schulman stated that he worries about cybersecurity "a lot" and that "if you're not worried about it as a company, you're living in a world of denial." In addition to his role as CEO of PayPal, Defendant Schulman is also the chairman of the board of Symantec, a cybersecurity company.

23.  On February 14, 2017, PayPal issued a press release entitled "PayPal to Acquire TIO Networks." The press release announced an agreement to acquire TIO "for $3.35 CAD ($2.56 USD) per share in cash or an approximate $304 million CAD ($233 million USD) equity value. The purchase price represents a premium of 25.2% to TIO's 90-trading day volume-weighted average price as of February 13, 2017, and 22.6% to the 20-trading day volume-weighted average price as of January 9, 2017, the trading day immediately preceding the date TIO entered into exclusive negotiations with PayPal." The $233 million USD represented 13% of PayPal's 2013 net income.

24.  TIO offers bill payment services to facilitate consumers making telecom, wireless, cable and utility bill payments. TIO's services are designed to give additional monthly bill payment options to less affluent customers who might not have banking accounts. As a bill payment processor, TIO keeps a large number of consumer financial records. According to Tio's Management Discussion and Analysis for the quarter ending April 30, 2017, as of that date Tio had 1,384,965 direct-to-consumer accounts in addition to an unspecified number of accounts of customers of bill-payment processors.

25.  On July 18, 2017, PayPal announced the completion of the TIO acquisition, noting that TIO serves 16 million bill pay accounts.

26.     After the acquisition, PayPal began integrating TIO into PayPal's systems. PayPal Vice President (and Defendant) John Kunze was tasked with overseeing the integration as well as supervising TIO. In PayPal's reporting hierarchy, TIO's founder and CEO, Hamed Shahbazi was assigned to report to Defendant Kunze.

### PayPal Discovers a Breach that Compromises TIO's Customers' Information

27.     On November 10, 2017, PayPal announced that it was suspending TIO's services indefinitely because PayPal had detected a security vulnerability in TIO's technology platform and was suspending the service while it investigated.

28.     Although Defendants informed the public that they had discovered a flaw in TIO's electronic security system, they did not state that anyone had actually exploited the flaw to gain access to TIO's system and customers' information.

29.     Three weeks later, on December 1, 2017, TIO and PayPal disclosed that they had discovered an actual breach that potentially compromised personal information of 1.6 million customers.

30.     In reality, Defendants were already aware, when they disclosed the vulnerability on November 10, 2017, that someone had breached TIO's security exposing the personal information of all of TIO's customers, as well as its bill pay clients and TIO's own employees. This was confirmed by several Former Employees at TIO.[1]

31.     FE1 was a Support Operations Manager at TIO from February 2016 to March 2018, and reported to the Senior Vice-President of Operations at TIO. FE1 learned of the breach on November 10, 2017 when FE1 and colleagues received an email around 3 p.m. inviting them to a special meeting. They learned that TIO would be shut down and were told that someone had access to confidential information for customers. FE1 was informed at the special meeting that someone had accessed the names and address for customers as well as employees' information, including gender, social security

---

[1] FE or "Former Employee" refers to former employees of Tio, PayPal, or one of their subsidiaries. Regardless of gender, all Former Employees cited here will be referred to by female pronouns to preserve their anonymity.

numbers, and dates of birth. FE1 also recalled that they were informed at that meeting that the intruder had accessed confidential customer information, and that PayPal said someone had tools and had accessed confidential information, which was sitting in TIO Networks' servers.

32. FE1 understood the breach had potential to impact all TIO customers and all TIO employees — *everyone whose personal information was stored on its servers*.

33. FE2 was a contract Senior Systems Administrator at TIO Networks in Vancouver from September 2017 to February 2018, reporting to TIO IT Manager Mike McKenzie. FE2 stated that in early November while waiting for an all-hands TIO meeting in their conference room FE2 was summoned back to a different office to hear an announcement from Kunze, telling that TIO had actually been breached. FE2 states that PayPal discovered the breach during a security analysis of the TIO network, and that when they were doing so, they discovered someone in the system. Immediately after Kunze informed FE2 of the breach, the network team immediately severed the link between the corporate and production side of the network, the latter of which being where sensitive customer information was stored, in an attempt to minimize harm to customers. FE2 understood the decision to sever ties between the two halves of the network to demonstrate a serious concern that TIO's customer information was in jeopardy or already had been compromised.

34. FE3 was Senior .NET Developer for TIO from January 2010 until April 1, 2018, who designed, implemented and maintained the billing and payment systems for TIO. FE3 also performed integrations between clients' application programming interfaces and TIO's server. FE3 stated that employees of TIO learned of a security *breach* in early November when TIO announced it had discovered a vulnerability. It was FE3's understanding that this was also the time the breach was discovered.

35. Thus, three separate accounts confirm that TIO fundamentally misrepresented the timeline of events. Rather than discovering a vulnerability in November, shutting down the service, and subsequently finding a breach, TIO and PayPal had already discovered an actual breach that exposed all of their customers' data by the time they announced the "vulnerability."

36. Plaintiffs have engaged the services of a cybersecurity expert in determining what information was likely available to TIO regarding the scope of potential compromise of TIO customers'

8

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

data at the time that the breach was discovered on November 10.  Mr. Kenny Yeung has 23 years of experience in information technology – including security, audit, risk assessment and risk mitigation, as well as IT operations, including over 20 years working for a major global financial institution in information technology roles.  Mr. Yeung currently works as an independent systems and security consultant.  He has led security audits for financial institutions with sophisticated information technology networks and worked with executives to deliver policy documents to ensure information security awareness and improve security hygiene.  Mr. Yeung has also performed "penetration testing" of security systems – that is, Mr. Yeung was hired to attempt to identify ways that criminals could attempt to breach his client's security systems.  Mr. Yeung reviewed PayPal's and TIO's public statements on November 10 and December 1, confidential witness statements set forth in this Complaint, and publicly available information concerning TIO's breach.

37. Mr. Yeung stated that, based on his experience in the field of cyber-security, the most valuable information in the possession of a company like TIO is its customers' personal and financial data.  This is the information that a criminal who breaches TIO's servers would immediately attempt to extract.  PayPal and TIO's conduct in response to the breach indicates that they were likely aware that *all* customer data had been potentially compromised as of November 10th.

38. Servers containing customer data is akin to a bank vault containing valuables.  A vulnerability is like a flaw or a weakness in the bank vault door.  But evidence of a network or server breach can be thought of as more like discovering that the vault door was open and there were marks of a break in.  Someone discovering evidence that the bank had been broken into can reasonably assume that whatever cash is in the vault is gone.  Similarly, when PayPal discovered the breach in TIO's systems, the most reasonable assumption was that all data in the breached system was potentially compromised.  All customer data should be assumed to be compromised unless portions of that data were kept behind internal firewalls, which can be thought of as a vault within a vault, or if customer data was encrypted, which can be thought of as reinforced safety deposit boxes.  However, based on the fact that PayPal took the drastic step of shutting down all of TIO's network, Mr. Yeung states that one can rightfully infer that no such protections were in place, because such a drastic step of shutting down TIO would be unnecessary if firewalls or encryption were in place or were not compromised.  Mr.

Yeung noted that if PayPal knew that information was "accessed or viewed" then it is very much equivalent to knowing that the information is "taken or copied". By nature, digital information is transmitted so that it can be viewed by another party. The only real difference is that saying the information was "taken or copied" means that it was saved after being accessed. The most likely and logical conclusion is that any intruder into a network would want to save the information they went to so much trouble to get access to.

**False and Misleading Statements**

39.  On November 10, 2017, PayPal issued a press release, entitled "TIO Networks Suspends Operations to Protect Customers." The press release stated, in part:

> SAN JOSE, Calif.—(BUSINESS WIRE)--PayPal Holdings, Inc. (Nasdaq: PYPL) announced that TIO Networks (TIO), a publicly traded company PayPal acquired in July 2017, has suspended operations to protect TIO's customers. ***This suspension of services is a result of PayPal's discovery of security vulnerabilities on the TIO platform and issues with TIO's data security program that do not adhere to PayPal's information security standards.*** TIO is not integrated into PayPal's platform. The PayPal platform is not impacted by this situation in any way and PayPal's customers' data remains secure.
>
> Upon the recent discovery of this vulnerability on the TIO platform, PayPal took action by initiating an internal investigation of TIO and bringing in additional third-party cybersecurity expertise to review TIO's bill payment platform. A focus of the investigation will also include TIO's practices and representations prior to the acquisition.
>
> While we apologize for any inconvenience this suspension of services may cause, the security of TIO's systems and the protection of TIO's customers are our highest priorities. We are working with the appropriate authorities to safeguard TIO customers.

(Emphasis added.)

40.  At the same time. TIO's website posted the following message: "On Friday, November 10, 2017, TIO Networks suspended our operations due to the discovery of security vulnerabilities on the TIO platform and issues with TIO's data security program. While we apologize for any inconvenience this suspension of services may cause, the security of TIO's systems and the protection of TIO's customers are our highest priorities. We are actively investigating this situation and working

with appropriate authorities to safeguard TIO customers." It also included the following message for customers of certain TIO services:

> On November 10, PayPal announced that TIO Networks, a publicly traded company that PayPal acquired in July 2017, suspended operations to protect TIO's customers. This suspension of services is a result of PayPal's discovery of security vulnerabilities on the TIO platform and issues with TIO's data security program that do not adhere to PayPal's information security standards.

41.     The statements referenced in ¶¶39-40 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants' statements were false and/or misleading (i) because they disclosed only a security vulnerability, rather than an actual security breach that potentially compromised all 16 million TIO customers, which PayPal and TIO did not acknowledge had been detected, and (ii) as a result, PayPal's public statements were materially false and misleading at all relevant times, and concealed the risk that TIO customers' personal information had been compromised.

## The Truth Partially Emerges

42.     On December 1, 2017, post-market, PayPal issued a press release entitled "TIO Networks Provides Update on Suspension of Operations." The press release stated, in part:

> SAN JOSE, Calif.—(BUSINESS WIRE)--PayPal Holdings, Inc. (Nasdaq: PYPL) today announced an update on the suspension of operations of TIO Networks (TIO), a publicly traded payment processor PayPal acquired in July 2017. ***A review of TIO's network has identified a potential compromise of personally identifiable information for approximately 1.6 million customers.*** The PayPal platform is not impacted in any way, as the TIO systems are completely separate from the PayPal network, and PayPal's customers' data remains secure.
>
> As announced on November 10, PayPal suspended the operations of TIO to protect customer data as part of an ongoing investigation of security vulnerabilities of the TIO platform. ***This ongoing investigation has identified evidence of unauthorized access to TIO's network, including locations that stored personal information of some of TIO's customers and customers of TIO billers.*** As a result, PayPal is taking steps to protect affected customers.
>
> TIO has also begun working with the companies it services to notify potentially affected individuals, and PayPal is working with a consumer credit reporting agency to provide

> free credit monitoring memberships. Individuals who are affected will be contacted directly and receive instructions to sign up for monitoring.

(Emphases added.)

43. At the same time, the following statement was posted to the tio.com website:

> As announced on November 10, the operations of TIO Networks were suspended to protect customer data as part of an ongoing investigation of security vulnerabilities of the TIO platform. We have been working tirelessly to conduct a thorough review and get to the bottom of the situation. Now we have a clearer picture.
>
> The ongoing investigation has uncovered evidence of unauthorized access to TIO's network, including locations that stored personal information of some of TIO's customers and customers of TIO billers.
>
> TIO has begun working with the companies it services to notify potentially affected individuals. We are working with a consumer credit reporting agency to provide free credit monitoring memberships. Individuals who are affected will be contacted directly and receive instructions to sign up for monitoring.
>
> We greatly appreciate the support of our billing partners, retailers, agents and consumers during this time. We will continue to communicate important updates to customers.
>
> If you are an affected customer that received the customer notice, and have any questions, you can reach the Experian call center Monday to Friday 6:00 AM - 6:00 PM PT, and Saturday and Sunday 8:00 AM to 5:00 PM PT at (855) 272-6796 (toll-free) for domestic callers or (479) 788-5000 (toll) for international callers.
>
> If you are a biller, retailer or agent and have any questions or would like to speak to someone about this situation, please feel free to contact the TIO call center at (866) 710-0846.

44. Thus, TIO revealed to the market the fact that a large number of TIO's customers' personal information had been potentially compromised.

45. In addition, with this news, the risk that TIO's customers' and TIO's billing partners' customers' personal information had been compromised materialized when TIO announced that 1.6 million customers had been accessed. This risk had been concealed by TIO's false statement at the beginning of the Class Period.

46. On this news, PayPal's share price fell $4.33, or 5.75%, to close at $70.97 on December 4, 2017, the following trading day.

47.     On April 25, 2018, PayPal revealed that it was winding TIO down and would not restore its services.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiffs and other Class members suffered significant losses and damages upon the disclosures and/or materialization of the risks.

**Additional Scienter Allegations**

49.     Defendant Kunze's scienter can be inferred directly from the fact that he was aware, by November 10, that TIO's servers were not merely vulnerable to a breach, but had actually been breached, as multiple confidential witnesses have attested.  Kunze at the same time caused TIO, TIO USA, and PayPal to issue public statements that contradicted these facts.

50.     Defendant Kunze's scienter is attributable to PayPal, TIO, and TIO USA because Kunze, who was charged with overseeing TIO's integration with PayPal, was acting within the scope of his apparent and actual authority when issuing statements regarding TIO's security vulnerabilities and breach.  In addition to the statements to the public cited above, Defendant Kunze made statements, under his own signature, to various state level regulators and individual customers of TIO and TIO USA to inform them of the data breach, beginning in December of 2017.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

51.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired PayPal common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PayPal common shares were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PayPal or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of PayPal;

- whether Defendants caused PayPal to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of PayPal securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

57. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- PayPal common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period, with an average of 9.9 million shares per trading day during the Class Period;

- the Company traded on the NASDAQ, with 152 market makers covering PayPal's stock in 2017;

- The Company was eligible to file an S-3 Registration Statement.

- PayPal's stock was covered by multiple analysts, with thirty-five analysts issuing more than one hundred reports during the Class Period;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold PayPal common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

58. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against PayPal, Tio, Tio USA, and Kunze

60. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

61. This Count is asserted against PayPal, TIO, TIO USA, and Kunze (the "Count 1 Defendants") and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62. During the Class Period, the Count 1 Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63. The Count 1 Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of PayPal common shares during the Class Period.

64. Count 1 Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of PayPal, TIO, and TIO USA were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of PayPal, their control over, and/or receipt and/or modification of PayPal allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning PayPal,

participated in the fraudulent scheme alleged herein.

65. Kunze, who is a senior officer of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other PayPal personnel to members of the investing public, including Plaintiffs and the Class.

66. As a result of the foregoing, the market price of PayPal common shares was artificially inflated during the Class Period. In ignorance of the falsity of PayPal's and the Individual Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of PayPal common shares during the Class Period in purchasing PayPal common shares at prices that were artificially inflated as a result of PayPal's and the Individual Defendants' false and misleading statements.

67. Had Plaintiffs and the other members of the Class been aware that the market price of PayPal common shares had been artificially and falsely inflated by PayPal's and the Individual Defendants' misleading statements and by the material adverse information which PayPal's and the Individual Defendants did not disclose, they would not have purchased PayPal's common shares at the artificially inflated prices that they did, or at all.

68. As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages upon the disclosures of the truth and/or materialization of the risks in amounts to be established at trial.

69. By reason of the foregoing, the Count 1 Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchase of PayPal common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

70. Plaintiffs repeat and reallege each and every allegation contained in the foregoing

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of PayPal, TIO, and TIO USA, and conducted and participated, directly and indirectly, in the conduct of PayPal, TIO, and TIO USA's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to PayPal's financial condition and results of operations, and to correct promptly any public statements issued by PayPal which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PayPal, TIO, and TIO USA disseminated in the marketplace during the Class Period.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause PayPal, TIO, and TIO USA to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of PayPal, TIO, and TIO USA within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of PayPal common shares.

74.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PayPal.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.      Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiffs and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury.

Dated: January 14, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Louis C. Ludwig*
Patrick V. Dahlstrom
Louis C. Ludwig
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
E-mail: pdahlstrom@pomlaw.com
          lcludwig@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jonathan Stern
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686.1060
Facsimile: (212) 202.3827
Email: jstern@rosenlegal.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS