JAMES N. KRAMER (SBN 154709)
*Email: jkramer@orrick.com*
ALEXANDER K. TALARIDES (SBN 268068)
*Email: atalarides@orrick.com*
SUZETTE J. BARNES (SBN 273116)
*Email: sbarnes@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendants PayPal Holdings, Inc.,
TIO Networks ULC, TIO Networks USA, Inc.,
Daniel H. Schulman, John D. Rainey, Jr. and John
Kunze

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SGARLATA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL HOLDINGS, INC., TIO NETWORKS ULC, TIO NETWORKS USA, INC., DANIEL H. SCHULMAN, JOHN D. RAINEY, JR., and JOHN KUNZE, <br><br> Defendants. | Case No. 3:17-cv-06956-EMC <br><br> **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> Date:    July 11, 2019 <br> Time:    1:30 p.m. <br> Judge:   Honorable Edward M. Chen <br> Ctrm:    5, 17th Floor |

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND RELIEF REQUESTED ............................................................ 1

STATEMENT OF ISSUES TO BE DECIDED.................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      INTRODUCTION ............................................................................................... 2

II.     STATEMENT OF FACTS ................................................................................... 4

III.    ARGUMENT....................................................................................................... 6

        A.      The Heightened Pleading Standards Governing Plaintiffs' SAC.......................... 6

        B.      The SAC, Like Its Predecessor, Fails To Plead A Strong Inference Of
                Scienter ........................................................................................................ 7

                1.      The FEs Again Fail To Substantiate Plaintiffs' Theory Of Fraud............. 9

                2.      Plaintiffs' Reliance On A Purported Cybersecurity Expert, Who
                        Has No Personal Knowledge About What Occurred At TIO, Much
                        Less About What Defendants Knew On November 10, 2017, Is
                        Unavailing ........................................................................................... 12

                3.      Plaintiffs Do Not Allege That The December 1 Update Was False
                        Or Misleading, Which Confirms That Their New Claim Is Baseless....... 14

                4.      The SAC's Allegations Do Not Give Rise Even To A Reasonable
                        Inference Of Scienter, Much Less One That Is Cogent And At Least
                        As Compelling As The Alternative Innocent Explanation....................... 14

        C.      The November 10 Announcement Was Not Inconsistent With The
                Allegedly "True" State Of Affairs .................................................................... 17

        D.      The SAC Fails To Plead That TIO USA Or John Kunze Were The
                "Makers" Of Any False Or Misleading Statement .............................................. 19

        E.      The SAC Fails To Plead Loss Causation ........................................................... 21

        F.      The Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation........ 22

IV.     CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Accuray, Inc. Sec. Litig.*,
  757 F. Supp. 2d 936 (N.D. Cal. 2010) ............................................................................11, 18

*Alfus v. Pyramid Tech. Corp.*,
  745 F. Supp. 1511 (N.D. Cal. 1990) .................................................................................... 16

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014) ........................................................................................ 12

*Applestein v. Medivation, Inc.*,
  861 F. Supp. 3d 1030 (N.D. Cal. 2012) (Chen, J.), *aff'd*, 561 F. App'x 598 (9th
  Cir. 2014) ............................................................................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 6

*Bao v. SolarCity Corp.*,
  2016 WL 4192177 (N.D. Cal. Aug. 9, 2016), *aff'd*, 884 F.3d 844 (9th Cir. 2018) ............... 12

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) ................................................................................. 14

*Browning v. Amyris, Inc.*,
  2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ...........................................................9, 12, 13

*Bruce v. Suntech Power Holdings Co. Ltd.*,
  2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ..................................................................... 20

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ..................................................................... 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................................................................. 6

*Coyne v. Gen. Elec. Co.*,
  2010 WL 2836730 (D. Conn. July 15, 2010), *aff'd*, 445 F. App'x 368 (2d Cir. 2011).......... 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ................................................................................................. 6

*In re Dot Hill Sys. Corp. Sec. Litig.*,
  594 F. Supp. 2d 1150 (S.D. Cal. 2008) ................................................................................ 16

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ............................................................................................................... 7

*In re Genzyme Corp. Sec. Litig.*,
   754 F.3d 31 (1st Cir. 2014) ......................................................................... 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ....................................................................... 19

*In re H & R Block Sec. Litig.*,
   527 F. Supp. 2d 922 (W.D. Mo. 2007), *aff'd*, 580 F.3d 753 (8th Cir. 2009) ......................... 15

*In re Immersion Corp. Sec. Litig.*,
   2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ............................................... 20

*Janus Capital Grp. v. First Deriv. Traders*,
   564 U.S. 135 (2011) ........................................................................... 19, 20, 21

*Kairalla v. Advanced Med. Optics, Inc.*,
   2008 WL 2879087 (C.D. Cal. June 6, 2008) ............................................... 18

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   200 F. Supp. 3d 987 (N.D. Cal. 2016) (Chen, J.) ...................................... 18

*Mallen v. Alphatec Holdings, Inc.*,
   2013 WL 1294640 (S.D. Cal. Mar. 28, 2013), *aff'd*, 607 F. App'x 694 (9th Cir. 2015) ........ 18

*In re Maxwell Techs., Inc. Sec. Litig.*,
   18 F. Supp. 3d 1023 (S.D. Cal. 2014) ....................................................... 10

*McCasland v. FormFactor, Inc.*,
   2008 WL 2951275 (N.D. Cal. July 25, 2008) ............................................ 11

*McGovney v. Aerohive Networks, Inc.*,
   2019 WL 452042 (N.D. Cal. Feb. 5, 2019) ................................................ 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ......................................................... 7, 21, 22

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ..................................................................... 21

*In re Molycorp, Inc. Sec. Litig.*,
   2015 WL 1540523 (D. Colo. Mar. 31, 2015) ............................................. 13

*Nathanson v. Polycom, Inc.*,
   87 F. Supp. 3d 966 (N.D. Cal. 2015) ......................................................... 11

*Neborsky v. Valley Forge Composite Techs., Inc.*,
   2014 WL 1705522 (S.D. Cal. Apr. 28, 2014) ............................................ 20

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ....................................................... 7, 12, 13, 17

iii

*In re OmniVision Techs., Inc. Sec. Litig.*,
  937 F. Supp. 2d 1090 (N.D. Cal. 2013) ........................................................12, 13

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................... 21

*In re OSG Sec. Litig.*,
  2015 WL 3466094 (S.D.N.Y. May 29, 2015) ......................................... 22

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  2011 WL 338865 (S.D. Ind. Jan. 28, 2011), *aff'd*, 679 F.3d 952 (7th Cir. 2012).............15, 17

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................. 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) ................................................................. 19

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ..................................................................15, 17

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ................................................................... 20

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
  963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).............. 16

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ..................................................................15, 18

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ................................................................... 18

*Schuster v. Symmetricon, Inc.*,
  2000 WL 33115909 (N.D. Cal. Aug. 1, 2000) ......................................... 15

*Sgarlata v. PayPal Holdings, Inc.*,
  2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) (Chen, J.) ............................... *passim*

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................. 7, 8

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ................................................................... 15

*In re SolarCity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ....................................................9, 19, 20

*In re Stratosphere Corp. Sec. Litig.*,
  66 F. Supp. 2d 1182 (D. Nev. 1999) ......................................................... 16

iv

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ................................................................................ *passim*

*Webb v. SolarCity Corp.*,
 884 F.3d 844 (9th Cir. 2018) ............................................................... 14, 15, 16

*Wenger v. Lumisys, Inc.*,
 2 F. Supp. 2d 1231 (N.D. Cal. 1998) .............................................................. 18

*Westley v. Oclaro, Inc.*,
 897 F. Supp. 2d 902 (N.D. Cal. 2012) (Chen, J.) ............................................ 15

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994) ...................................................................... 15, 16

*In re Yahoo! Inc. Sec. Litig.*,
 2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015) ........ 18

*Zucco Partners, LLC v. Digimarc Corp.*,
 445 F. Supp. 2d 1201 (D. Or. 2006), *aff'd*, 552 F.3d 981 (9th Cir. 2009) ............................. 10

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ................................................................... *passim*

**Statutes and Rules**

15 U.S.C.
 Section 78j(b) (Section 10(b) of the Securities Exchange Act of 1934) ......................... *passim*
 Section 78u-4(b) (Private Securities Litigation Reform Act of 1995) ............................ *passim*

17 C.F.R.
 Section 240.10b-5 (Securities and Exchange Commission Rule 10b-5) .................. 1, 6, 19, 21

Fed. R. Civ. P.
 Rule 8(a) ........................................................................................................ 1
 Rule 9(b) ............................................................................................... *passim*
 Rule 12(b)(6) ............................................................................................. 1, 6

**NOTICE OF MOTION AND RELIEF REQUESTED**

PLEASE TAKE NOTICE that on July 11, 2019, at 1:30 p.m., or at such later date and time as the Court may order, in Courtroom 5 of the above-captioned Court, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Edward M. Chen, Defendants PayPal Holdings, Inc. ("PayPal"), TIO Networks ULC ("TIO"), TIO Networks USA, Inc. ("TIO USA"), Daniel H. Schulman, John D. Rainey, Jr. and John Kunze (the "Individual Defendants," and together with PayPal, TIO and TIO USA, "Defendants") will and hereby do move to dismiss Lead Plaintiffs Michael Eckert and Edwin Bell's ("Plaintiffs") Second Amended Complaint for Violation of the Federal Securities Laws ("SAC").

Defendants move under Fed. R. Civ. P. 12(b)(6) and seek an order dismissing the SAC, without leave to amend, for its failure to comply with Fed. R. Civ. P. 8(a), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motion is based on the Memorandum of Points and Authorities below; the accompanying Request for Judicial Notice and exhibits attached thereto; the Court's files; and oral argument of counsel at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claim against PayPal, TIO, TIO USA and John Kunze for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission Rule 10b-5 should be dismissed because the SAC fails to plead facts giving rise to a strong inference that these Defendants made a false or misleading statement with a fraudulent state of mind, and thus fails to plead the element of "scienter."

2. Whether Plaintiffs' claim against PayPal, TIO, TIO USA and John Kunze for violation of Section 10(b) and Rule 10b-5 should be dismissed because the SAC fails to plead an actionably false or misleading statement, and thus fails to plead the element of "falsity."

3. Whether Plaintiffs' claim against TIO USA and John Kunze for violation of Section 10(b) and Rule 10b-5 should be dismissed because none of the allegedly false and misleading statements cited in the SAC were made by TIO USA or John Kunze.

4. Whether Plaintiffs' claim against PayPal, TIO, TIO USA and John Kunze for violation of Section 10(b) and Rule 10b-5 should be dismissed because the SAC fails to plead

1   facts showing that PayPal's stock price declined because of a disclosure that revealed the alleged

2   fraud to investors, and thus fails to plead the element of "loss causation."

3       5.      Whether Plaintiffs' claim against the Individual Defendants for violation of

4   Section 20(a) of the Exchange Act should be dismissed because the SAC fails to plead a primary

5   violation of Section 10(b).

6                    **MEMORANDUM OF POINTS AND AUTHORITIES**

7   **I.      INTRODUCTION**

8       Plaintiffs' SAC does not cure the fundamental defect in their First Amended Complaint

9   ("FAC"), namely, the failure to plead specific facts creating a strong inference that Defendants

10  intentionally or with deliberate recklessness made false and misleading statements to investors.

11  And, as before, Plaintiffs advance a theory of fraud that is fundamentally illogical—not one that

12  is "cogent and at least as compelling" as the alternative innocent explanation, as required by the

13  PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

14      Like the FAC, the SAC alleges that PayPal's November 10, 2017 announcement that it

15  was suspending the operations of its TIO service due to the discovery of security vulnerabilities

16  was fraudulent, because the announcement did not disclose that Defendants allegedly already

17  knew that someone had breached TIO's network and had accessed the personal data of 1.6

18  million TIO users. And like the FAC, the SAC attempts to substantiate this claim with the

19  statements of three former employees of TIO, or "FEs." In addition, based on the musings of a

20  purported cybersecurity expert retained by Plaintiffs, the SAC goes even farther and alleges that

21  Defendants not only knew on November 10 that someone had accessed the personal data of 1.6

22  million users, but also knew that the breach had potentially compromised the privacy of all TIO

23  users. The expert's opinion is extrapolated from PayPal and TIO's actions in response to the

24  breach, which he speculates indicates that Defendants were "likely" aware on November 10 that

25  the data of all sixteen million TIO users had been exposed.

26      As demonstrated below, the SAC, like the FAC, fails to plead scienter. First, the three

27  FEs again "at most establish that some of the Defendants may have known that there was some

28  breach in TIO's platform," but they do not substantiate the claim that Defendants knew on

November 10, 2017 that someone "was at that time logged in to TIO's networks *and had access to the personal financial information of 1.6 million users.*" *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *7 (N.D. Cal. Dec. 13, 2018) (Chen, J.).  Like before, "[n]one of the FEs state Defendants knew on November 10, 2017 of the magnitude of the breach affecting 1.6 million customers or the fact that personal identifiable information of those customers had been accessed." *Id.*  Nor do they assert, much less provide facts based on personal knowledge to establish, that the data of all sixteen million TIO customers was exposed, or that anyone at PayPal or TIO was aware of this purported "fact" on November 10, as Plaintiffs now assert in the SAC.

Second, Plaintiffs' purported expert adds nothing to the analysis because he admittedly has no personal knowledge whatsoever of the nature and circumstances of the TIO security vulnerabilities and breach, let alone of what Defendants knew on November 10, 2017.  He is not alleged to have talked with anyone at PayPal or TIO, or to have reviewed any internal company documents.  Ins short, his "expert" opinion of what Defendants "likely" knew on November 10 is entirely speculative.  Contrary to Plaintiffs' urgings, hiring someone to offer their speculative opinion on what Defendants "likely" knew and when, is no substitute for the well-pleaded facts required by the PSLRA showing what Defendants <u>actually</u> knew and when.

Third, PayPal disclosed on December 1, 2017 that it had identified a potential compromise of personally identifiable information for 1.6 million TIO users, yet Plaintiffs do not allege that this statement was false or misleading because it failed to disclose the magnitude of the TIO security breach.  To the contrary, Plaintiffs allege that this disclosure was corrective, i.e., it revealed the truth.  The assertion that this disclosure was corrective lays waste to Plaintiffs' new theory in the SAC that the breach compromised the privacy of all sixteen million TIO customers and that Defendants knew of this purported fact on November 10, 2017.

Fourth, and perhaps most importantly, the SAC's allegations do not give rise to even a plausible inference of scienter, much less the cogent and compelling inference necessary under the PSLRA and *Tellabs*.  Why would Defendants lie about TIO's security problems on November 10, 2017, as Plaintiffs allege, only to reveal the truth three weeks later?  The SAC does not even attempt to answer that question.  Indeed, it does not explain how Defendants benefitted, or could

even hope to benefit, by committing securities fraud over a three-week period, knowing that they would <u>voluntarily</u> expose their own alleged fraud within weeks.  Nor does it assert that any Defendant profited from, or had a motive for, the alleged fraud.  Moreover, if, as Plaintiffs claim, Defendants were bent on misleading investors about the security of TIO's platform and users' data, one would have expected them to continue operating TIO, and to not say <u>anything</u> about TIO's security vulnerabilities.  But rather than keep silent and continue operating the $233 million acquisition, Defendants promptly shut down TIO and disclosed the existence of the vulnerabilities without <u>any</u> accompanying positive information, and then a mere three weeks later disclosed a "full-blown data breach" (to use Plaintiffs' prior words).  It simply defies logic that Defendants allegedly seeking to defraud investors about the security of TIO's platform and users' data would voluntarily make such adverse disclosures, all within a span of three weeks.

Companies are entitled to investigate problems for a reasonable time until they have a full story to reveal.  Consistent with that principle, the only cogent and compelling inference that can rationally be drawn from the allegations here is that Defendants did not disclose the existence of a security breach or its magnitude in the November 10, 2017 announcement because they were still investigating the situation and did not yet know the full extent of the problem.  This innocent inference is confirmed by the fact that Defendants disclosed the findings of their investigation a mere three weeks later and made no effort whatsoever to profit from the alleged delay.

For these and other reasons discussed below, the SAC should be dismissed with prejudice.

## II.   <u>STATEMENT OF FACTS</u>[1]

PayPal is a leading technology platform and digital payments company that enables digital and mobile payments on behalf of consumers and merchants worldwide.  SAC ¶ 21.  Through its various products, PayPal enables consumers and merchants to access and move their money, and to purchase or receive payment for goods, any time, on any platform, via any device.  Ex. A at 4.

On February 14, 2017, PayPal announced that it had entered into an agreement to purchase TIO Networks for $233 million.  SAC ¶ 23; Ex. B.  At the time, TIO was a Canadian

---

[1] All "Ex. _" references are to the exhibits attached to Defendants' Request for Judicial Notice. In addition, "TIO" refers to TIO Networks ULC (formerly TIO Networks Corp.), whereas "TIO USA" refers to TIO Networks USA, Inc., a wholly-owned subsidiary of TIO.  SAC ¶¶ 15-16.

cloud-based bill payment processor that offered convenient bill payment services to consumers who do not have affordable access to basic financial services.  SAC ¶ 24; Ex. B.

PayPal completed its acquisition of TIO on July 18, 2017, SAC ¶ 25, and shortly thereafter began testing the security of TIO's platform with a view towards integrating TIO into PayPal's network—a process that takes months to complete.  During this process, PayPal discovered security vulnerabilities on TIO's platform and issues with TIO's data security program.  In response, PayPal promptly suspended TIO's operations and reported its discovery of the vulnerabilities to the authorities.  PayPal also commenced an internal investigation with the help of third-party cybersecurity experts to determine the scope and impact of the vulnerabilities, and candidly disclosed its discovery of the vulnerabilities to the public.  As PayPal explained in a press release on November 10, 2017 (the "November 10 Press Release"):

> [TIO] has suspended operations to protect TIO's customers.  This suspension of services is a result of PayPal's discovery of security vulnerabilities on the TIO platform and issues with TIO's data security program that do not adhere to PayPal's information security standards.  TIO is not integrated into PayPal's platform.  The PayPal platform is not impacted by this situation in any way and PayPal's customers' data remains secure.

> Upon the recent discovery of this vulnerability on the TIO platform, PayPal took action by initiating an internal investigation of TIO and bringing in additional third-party cybersecurity expertise to review TIO's bill payment platform.  A focus of the investigation will also include TIO's practices and representations prior to the acquisition.

> While we apologize for any inconvenience this suspension of services may cause, the security of TIO's systems and the protection of TIO's customers are our highest priorities.  We are working with the appropriate authorities to safeguard TIO customers.

> Our investigation is ongoing.  We will communicate with TIO customers and merchant partners directly as soon as we have more details. Customer updates will also be posted at www.tio.com.

Ex. C; SAC ¶ 39.  A substantially identical announcement was posted at the same time on TIO's website (the "November 10 Website Post," and together with the November 10 Press Release, the "November 10 Announcement(s)").  *See* Ex. D; SAC ¶ 40.

When PayPal's investigation identified the scope and impact of the vulnerabilities, PayPal promptly disclosed this information to the public.  Specifically, on December 1, 2017—just three weeks after the November 10 Announcement—PayPal disclosed in a press release and on TIO's

website (the "December 1 Update") that:

> [a] review of TIO's network has identified a potential compromise of personally identifiable information for approximately 1.6 million customers. The PayPal platform is not impacted in any way, as the TIO systems are completely separate from the PayPal network, and PayPal's customers' data remains secure.
>
> As announced on November 10, PayPal suspended the operations of TIO to protect customer data as part of an ongoing investigation of security vulnerabilities of the TIO platform. This ongoing investigation has identified evidence of unauthorized access to TIO's network, including locations that stored personal information of some of TIO's customers and customers of TIO billers. As a result, PayPal is taking steps to protect affected customers.
>
> TIO has also begun working with the companies it services to notify potentially affected individuals, and PayPal is working with a consumer credit reporting agency to provide free credit monitoring memberships. Individuals who are affected will be contacted directly and receive instructions to sign up for monitoring.
>
> More information has been posted at www.tio.com.

Ex. E; SAC ¶¶ 42-43. On the next trading day (December 4, 2017), PayPal's stock price declined $4.33, SAC ¶ 46, and this lawsuit was filed two days later, ECF No. 1.

## III.   ARGUMENT

### A.   The Heightened Pleading Standards Governing Plaintiffs' SAC

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of the complaint, the Court need not accept as true allegations that are conclusory, unreasonable inferences or unwarranted deductions of fact, or allegations that contradict documents referred to in the complaint or matters subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The PSLRA and Rule 9(b) impose two additional exacting pleading requirements in Section 10(b) and Rule 10b-5 cases like this one,[2] both of which must be met for a complaint to survive a motion to dismiss. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017). First, the complaint must plead with particularity

---

[2] To prevail on a Section 10(b) and Rule 10b-5 claim, a plaintiff must establish, among other things, a false or materially misleading statement (falsity); fraudulent intent (scienter); and a causal connection between the false or materially misleading statement and the plaintiff's loss (loss causation). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

1    each statement alleged to have been false or misleading, the reasons why the statement was false

2    or misleading when made, and all facts on which that belief is formed.  15 U.S.C. § 78u-4(b)(1);

3    Fed. R. Civ. P. 9(b).  "This means that a plaintiff must provide, in great detail, all the relevant

4    facts forming the basis of her belief.  It is not sufficient for a plaintiff's pleadings to set forth a

5    belief that certain unspecified sources will reveal, after appropriate discovery, facts that will

6    validate her claim."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).

7         Second, the complaint must plead with particularity facts giving rise to a "strong

8    inference" that the defendants acted with required state of mind, i.e., scienter.  15 U.S.C. § 78u-

9    4(b)(2).  Because Section 10(b)'s use of the word "manipulative" "connotes intentional or willful

10   conduct designed to deceive or defraud investors," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

11   199 (1976), a plaintiff must plead specific facts creating as "strong inference" that the defendants

12   made false or misleading statements with, "at a minimum, *deliberate* recklessness," *In re NVIDIA*

13   *Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (quotations omitted).  This "standard for

14   recklessness is actually much closer to one of intent."  *Id.*  Accordingly, to satisfy the PSLRA's

15   heightened pleading requirement for scienter, the plaintiff "must state specific facts indicating no

16   less than a degree of recklessness that strongly suggests actual intent" to mislead.  *Metzler Inv.*

17   *GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (quotations omitted).

18        A "strong inference" of scienter is one that is "more than merely plausible or reasonable—

19   it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."

20   *Tellabs*, 551 U.S at 314.  Under this comparative approach, the Court must weigh <u>all</u> facts and

21   inferences, including those that weigh <u>against</u> a finding of scienter.  *Id.* at 323-24.  If the facts

22   alleged and those subject to judicial notice do not produce an inference of fraud that is cogent and

23   at least as compelling as the competing innocent explanation for the same facts, the complaint

24   fails to plead scienter and must be dismissed.  *See Zucco*, 552 F.3d at 1006-07.

25        **B.    <u>The SAC, Like Its Predecessor, Fails To Plead A Strong Inference Of Scienter</u>**

26        Like the FAC, the SAC attempts to plead scienter based on the accounts of three unnamed

27   former employees of TIO—FE1, FE2 and FE3.  SAC ¶¶ 31-34.  Just as the FAC did, the SAC

28   alleges that these FEs "confirmed" that Mr. Kunze (and by extension the other Defendants) knew

1    on November 10, 2017 "that an unknown but unauthorized person or entity was at that time

2    logged in to TIO's networks and had access to the personal financial information of 1.6 million

3    users," and that Mr. "Kunze told TIO employees of this fact at the same time that he directed that

4    the TIO service be suspended." *Id.* ¶¶ 4, 35.  Unlike the FAC, however, the SAC alleges that Mr.

5    Kunze also knew on November 10 that the breach "potentially compromised all [sixteen] million

6    TIO customers." *Id.* ¶¶ 30, 41.  In support of this claim, the SAC relies on a purported expert

7    who says that Defendants' conduct in response to the breach indicates that they were "likely"

8    aware on November 10 that all TIO users had been potentially compromised.  *Id.* ¶¶ 36-38.

9        As demonstrated below, the SAC, like its predecessor, fails to plead facts creating a strong

10   inference of scienter.  Even if we assume that the November 10 Announcement was misleading,

11   the SAC does not contain any specific facts indicating that Defendants issued the Announcement

12   with "a degree of recklessness that strongly suggests actual intent" to mislead, as required by the

13   PSLRA.  *Silicon Graphics*, 183 F.3d at 979.  Like before, "[n]one of the FEs state Defendants

14   knew on November 10, 2017 of the magnitude of the breach affecting 1.6 million customers or

15   the fact that personal identifiable information of those customers had been accessed."  *Sgarlata*,

16   2018 WL 6592771, at \*7.  And neither the FEs nor Plaintiffs' purported expert offer any facts

17   based on personal knowledge to show that the TIO breach exposed or compromised the data of all

18   sixteen million TIO users, or that Defendants were aware of this purported "fact" on November

19   10.  Tellingly, Plaintiffs do not allege that the December 1 Update, which only disclosed "a

20   potential comprise of personally identifiable information for approximately 1.6 million

21   customers," SAC ¶ 42, was false or misleading.  To the contrary, they claim that the Update was

22   <u>corrective</u>, i.e., revealed the "truth," which demolishes Plaintiffs' new the assertion that there was

23   an actionable failure to disclose that the breach exposed the data of all sixteen million TIO users.

24       Critically, any inference of scienter that might exist here is overwhelmed by indisputable

25   facts that are fundamentally inconsistent with fraudulent intent.  When those facts are considered,

26   as required by the PSLRA, it is evident that the only cogent and most compelling inference that

27   can rationally be drawn from the allegations here is that Defendants did not make any alleged

28   misstatement with scienter.  Conversely, any inference of scienter that one could possibly draw

8

1    from the SAC's allegations is implausible.

2              **1.      The FEs Again Fail To Substantiate Plaintiffs' Theory Of Fraud**

3         "[A] complaint relying on statements from confidential witnesses must pass two hurdles

4    to satisfy the PSLRA pleading requirements." *Zucco*, 552 F.3d at 995. "First, the confidential

5    witnesses whose statements are introduced to establish scienter must be described with sufficient

6    particularity to establish their reliability and personal knowledge." *Id.* "Second, those statements

7    which are reported by confidential witnesses with sufficient reliability and personal knowledge

8    must themselves be indicative of scienter." *Id.* In short, confidential witness "statements cannot

9    create a strong inference of scienter unless the reporting witness 'has reliable personal knowledge

10   of the defendants' mental state.'" *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1009

11   (N.D. Cal. 2017) (quoting *Zucco*, 552 F.3d at 998). "[T]he Court may disregard confidential

12   witness statements that are speculative, lack specificity, or are not based on personal

13   knowledge.'" *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *18 (N.D. Cal. Mar. 24, 2014).

14        The confidential witnesses on which the SAC relies again do not substantiate Plaintiffs'

15   theory of fraud. Indeed, the SAC's allegations regarding FE2 and FE3 are substantively identical

16   to the FAC's allegations regarding those FEs, which the Court has already rejected as insufficient.

17   *Compare* SAC ¶¶ 33-34, *with* FAC ¶¶ 33-34; *see Sgarlata*, 2018 WL 6592771, at *7 ("FE2 stated

18   that in early November 2017, they discovered 'someone in the system," and "FE3 shared a similar

19   account that employees of TIO learned of a security breach in early November when TIO

20   announced it had discovered a vulnerability" (quotations omitted)). Like before, neither FE2 nor

21   FE3 specifies the nature of the breach that they learned of in "early November 2017," let alone

22   asserts that Mr. Kunze, or anyone else at PayPal or TIO, knew on November 10, 2017 that the

23   data of 1.6 million TIO users had been accessed. *See Tellabs*, 551 U.S. at 326 ("[O]missions and

24   ambiguities count against inferring scienter"). Nor do they assert, much less provide facts based

25   on personal knowledge to show, that the data of all TIO customers was exposed or accessed, let

26   alone that any Defendant was aware of this purported fact on November 10.

27        As for FE1, Plaintiffs previously alleged that she "stated that on November 10, 2017,

28   '[w]e were told they suspected or saw that someone had access to confidential information for

9

1   customers' and that '[t]hey shut down service to complete the investigation.'"  *Sgarlata*, 2018

2   WL 6592771, at *7 (quoting FAC ¶ 32).  As with FE2 and FE3's statements, the Court ruled that

3   FE1's statement—which was presented as a *direct quote* of what she actually said—did not

4   substantiate the FAC's allegations.  *Id.*  In an effort to overcome that ruling, the SAC omits FE1

5   earlier equivocal statement that "they <u>suspected</u> or saw" that someone had access to customer

6   data, as well as the statement that "[t]hey shut down the service to complete the investigation."  It

7   also no longer directly quotes FE1 and modifies her purported "statement" so that it now states

8   that she and her colleagues "were told that someone had access to confidential information for

9   customers" and "had accessed the names and address for customers as well as employees'

10  information, including gender, social security numbers, and dates of birth."  SAC ¶ 31.

11  According to the SAC, "FE1 understood the breach had potential to impact all TIO customers and

12  all TIO employees—*everyone whose personal information was stored on its servers*."  *Id.* ¶ 32.

13       In light of the Ninth Circuit's emphasis on the importance of ensuring the reliability of

14  confidential witnesses, *see Zucco*, 552 F.3d at 995-99, the unexplained changes to FE1's earlier

15  quoted statements cast serious doubt on the reliability of what Plaintiffs now claim she was told

16  on November 10, *see Applestein v. Medivation, Inc.*, 861 F. Supp. 3d 1030, 1038 (N.D. Cal.

17  2012) (Chen, J.), *aff'd*, 561 F. App'x 598 (9th Cir. 2014).  That is particularly true given that, in

18  contrast to the FAC, the SAC no longer quotes what FE1 actually said.  *See In re Maxwell Techs.,*

19  *Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1034 (S.D. Cal. 2014).  In any event, the new version of

20  FE1's purported "statement," like the old one, <u>does not</u> contain an assertion that Mr. Kunze (or

21  anyone else) knew on November 10 that someone had accessed the data of 1.6 million users.

22  Instead, the SAC merely alleges that FE1 was told by an unspecified individual or individuals that

23  someone had access to the data of some unspecified number of TIO users and employees.

24       Moreover, the SAC's assertion that FE1 "understood" that "the breach had the potential to

25  impact all TIO customers and all TIO employees" lacks any foundation to show that FE1's

26  understanding is based on her personal knowledge.  *See Zucco Partners, LLC v. Digimarc Corp.*,

27  445 F. Supp. 2d 1201, 1207 (D. Or. 2006) ("CW6 alleges he 'understood that some employees

28  were improperly capitalizing their labor on contracts.'  This does not appear to be based on

CW6's personal knowledge but instead on something more like gossip or speculation"), *aff'd*, 552 F.3d 981 (9th Cir. 2009).  The SAC does not allege that FE1 was told this purported fact on November 10.  Nor does it explain how FE1, a "Support Operations Manager," SAC ¶ 31, who is not alleged to have had any IT-role at TIO, or to have had any involvement in the discovery or investigation of the TIO security vulnerabilities and breach, would know that the personal data of "all TIO customers and all TIO employees" had been exposed.  In addition, FE1's earlier statement that "they <u>suspected</u> or saw that someone had access to confidential information for customers" and thus "shut down the service to complete the investigation," FAC ¶ 32 (emphasis added)—which the SAC conveniently omits—undermines the notion that Defendants knew on November 10 the magnitude of the breach.  Indeed, the fact that PayPal merely "suspected" that someone had access to customer data and needed "to complete the investigation" into the security breach suggests that Defendants did <u>not</u> know the magnitude of the breach.

Finally, as noted above, a confidential witness cannot create a strong inference of scienter unless the witness "has reliable personal knowledge of the defendants' mental state." *Zucco*, 552 F.3d at 998.  Yet FE1 does not have <u>any</u> personal knowledge of Mr. Kunze's mental state. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (confidential witnesses did not create a strong inference of scienter because they "lack first hand knowledge regarding what the individual defendants knew or did not know").  She is not alleged to have had any personal interactions with Mr. Kunze. *See In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010) ("[I]t is difficult to surmise how the opinions and observations of the CWs [who had no personal contact with the individual defendants] could support a reasonable inference about what these individual Defendants knew or did not know at the time each of the challenged statements was made."); *McCasland v. FormFactor, Inc.*, 2008 WL 2951275, at *8 (N.D. Cal. July 25, 2008) (confidential witnesses did not support an inference of scienter because they were not "alleged to have had any interaction or communication with any of the defendants").  In fact, FE1, like FE3, does not even <u>mention</u> Mr. Kunze, let alone make any assertions about what he purportedly knew on November 10, 2017. *See Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 980 (N.D. Cal. 2015) ("[F]our of the seven CWs do not even mention

1    either of the CFOs, let alone make allegations about their states of mind."); *Bao v. SolarCity*

2    *Corp.*, 2016 WL 4192177, at *9 (N.D. Cal. Aug. 9, 2016) ("CW 4 does not even assert

3    knowledge of Individual Defendants' state of mind."), *aff'd*, 884 F.3d 844 (9th Cir. 2018).

4                   **2.      Plaintiffs' Reliance On A Purported Cybersecurity Expert, Who Has
                             No Personal Knowledge About What Occurred At TIO, Much Less
5                            About What Defendants Knew On November 10, 2017, Is Unavailing**

6         In a tacit concession that the FEs again fail to substantiate their theory of fraud, Plaintiffs

7    attempt to bridge the gap by offering the opinion of a purported cybersecurity "expert" named

8    "Kenny Yeung."  SAC ¶ 36.  According to the SAC, "based on his experience in the field of

9    cyber-security" and review "of PayPal's and TIO's public statements on November 10 and

10   December 1, [the] confidential witness statements set forth in th[e] [SAC], and publicly available

11   information concerning TIO's breach," Yeung opined that "PayPal and TIO's conduct in response

12   to the breach indicates that they were likely aware that ***all*** customer data had been potentially

13   compromised as of November 10."  *Id.* ¶¶ 36-38.

14        But allegations based on the opinions of purported experts "are subject to the same

15   standard applied to evaluate facts alleged to have originated with any 'confidential informant' (or

16   other witness.'"  *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1107 (N.D. Cal.

17   2013) (citation omitted); *Browning*, 2014 WL 1285175, at *19.  Thus, as with confidential

18   witness statements, allegations based on a purported expert's opinion will pass muster under the

19   PSLRA only if the expert has <u>personal knowledge</u> of the underlying facts on which the expert

20   bases his or her conclusion.  *See e.g.*, *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th

21   Cir. 2014) ("Dr. Schneider's opinion is insufficient to establish falsity adequately because he has

22   no personal knowledge of the facts on which he bases his conclusion."); *NVIDIA*, 768 F.3d at

23   1058 (allegations from industry expert did not support plaintiffs' allegations because expert's

24   "information [was] secondhand" and not based on personal knowledge).  And if, as here, the

25   opinion is offered to establish the defendants' scienter, the purported expert must "ha[ve] <u>reliable</u>

26   <u>personal knowledge of the defendants' mental state</u>."  *Zucco*, 552 F.3d at 998 (emphasis added).

27        Plaintiffs' purported expert has no personal knowledge <u>whatsoever</u> of the nature and

28   circumstances of the TIO security vulnerabilities and breach, or of what Defendants knew on

1   November 10, 2017.  Yeung "is not alleged to have ever worked with [PayPal or TIO], much less

2   on the [TIO security breach]."  *OmniVision*, 937 F. Supp. 2d at 1108 (allegations based on expert

3   failed to satisfy PSLRA's pleading requirements because the expert lacked personal knowledge);

4   *see also In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1540523, at *16 (D. Colo. Mar. 31, 2015)

5   (allegations based on expert did not support plaintiffs' claims where "Plaintiffs do not allege that

6   Molycorp employed the industry expert" or that he otherwise had personal knowledge); *NVIDIA*,

7   768 F.3d at 1061 (confidential witnesses did not support an inference of scienter because they

8   "never worked for NVIDIA" and thus had no personal knowledge).  He is also not alleged to have

9   talked with anyone at PayPal or TIO, or to have reviewed any internal company documents.  Nor

10  is he alleged to otherwise have any personal knowledge of (i) the architecture of TIO's network

11  or the security measures that were in place, (ii) the nature of the TIO security vulnerabilities or

12  breach, (iii) PayPal's discovery and investigation of the vulnerabilities and breach, (iv) PayPal's

13  decision to suspend TIO's operations, or (v) what and when anyone at PayPal or TIO knew about

14  the vulnerabilities and breach.  In short, Yeung's purported expert opinion is entirely

15  speculative.[3]  Not surprisingly, "nowhere do[es] [he] provide any <u>facts</u> to show that the

16  [D]efendants knowingly or with reckless disregard made false or misleading statements."

17  *Browning*, 2014 WL 1285175, at *19 (emphasis added) (allegations based on expert did not

18  support an inference of scienter); *see also McGovney v. Aerohive Networks, Inc.*, 2019 WL

19  452042, at *9 (N.D. Cal. Feb. 2, 2019) (witness's statement was "unhelpful to the inquiry as to

20  what [defendants] knew" because the witness was merely providing "an opinion" without

21  personal knowledge of the underlying facts).

---

[3] *See* SAC ¶ 38 ("Someone discovering evidence that the bank had been broken into can
reasonably assume that whatever cash is in the vault is gone.  Similarly, when PayPal discovered
the breach in TIO's systems, the most reasonable assumption was that all data in the breached
system was potentially compromised"; "All customer data should be assumed to be compromised
unless portions of that data were kept behind internal firewalls . . . [h]owever, based on the fact
that PayPal took the drastic step of shutting down all of TIO's network, Mr. Yeung states that one
can rightfully infer that no such protections were in place, because such a drastic step of shutting
down TIO would be unnecessary if firewalls or encryption were in place or were not
compromised"; "Mr. Yeung noted that if PayPal knew that information was 'accessed or viewed'
then it is very much equivalent to knowing that the information is 'taken or copied' [because] . . .
[t]he most likely and logical conclusion is that any intruder into a network would want to save the
information they went to so much trouble to get access to").

1

2

        **3.**        **Plaintiffs Do Not Allege That The December 1 Update Was False Or Misleading, Which Confirms That Their New Claim Is Baseless**

3

        As noted above, the December 1 Update disclosed that PayPal's investigation had

4

"identified a potential comprise of personally identifiable information for approximately 1.6

5

million customers."  SAC ¶ 42.  Plaintiffs do not allege that the Update was false or misleading

6

because it failed to disclose the magnitude of the TIO security breach.  To the contrary, they

7

allege that the Update is the <u>corrective</u> disclosure (i.e., revealed the truth) that ends the class

8

period.  *Id.* ¶¶ 42-45.  That allegation is irreconcilable with, and dooms, Plaintiffs' new theory

9

that TIO's security breach "potentially compromised all sixteen million TIO customers" and that

10

Defendants knew of this purported fact on November 10, 2017 and failed to disclose it.  *Id.* ¶ 41.

11

12

        **4.**        **The SAC's Allegations Do Not Give Rise Even To A Reasonable Inference Of Scienter, Much Less One That Is Cogent And At Least As Compelling As The Alternative Innocent Explanation**

13

        Plaintiffs' failure to plead a strong inference of scienter is most glaring when the facts and

14

inferences weighing against a finding of scienter are factored into the analysis, as required by the

15

PSLRA.  *See Tellabs*, 551 U.S. at 323-24.  "Even if a set of allegations may create an inference of

16

scienter greater than the sum of its parts, it must still be [cogent and] at least as compelling as an

17

alternative innocent explanation."  *Zucco*, 552 F.3d at 1006.  Here, Plaintiffs' allegations do not

18

give rise to even a reasonable inference of scienter, much less a cogent and compelling one.

19

        <u>First</u>, conspicuously absent from the SAC is any allegation that Defendants profited from,

20

or had a motive for, the alleged fraud.  *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D.

21

Cal. 2017) ("[T]he 'absence of a motive allegation . . . may significantly undermine a plaintiff's

22

theory of fraud.'").  Indeed, the SAC "never explain[s] how [D]efendants benefitted in any way

23

by committing securities fraud over a [three]-week period, knowing that their [alleged] fraud

24

would be exposed within weeks."  *Coyne v. Gen. Elec. Co.*, 2010 WL 2836730, at *9 n.8 (D.

25

Conn. July 15, 2010) (dismissing complaint for failure to plead scienter), *aff'd*, 445 F. App'x 368

26

(2d Cir. 2011).  There is, for example, no allegation that any Individual Defendant sold PayPal

27

stock during the class period, and as the Ninth Circuit and this Court have recognized, "a lack of

28

stock sales can detract from a scienter finding."  *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th

14

1   Cir. 2018) (citing *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012)); *see*

2   *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 929 (N.D. Cal. 2012) (Chen, J.).  *Tellabs* instructs

3   courts to consider all inferences, and the fact that the Individual Defendants did not sell any of

4   their PayPal stock means that they stood to <u>lose</u> money as a result of their alleged fraud.  *See*

5   *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008); *In re Worlds of Wonder Sec. Litig.*, 35

6   F.3d 1407, 1427 (9th Cir. 1994) (finding no scienter where defendants "sold only a minuscule

7   fraction" of their stock and thus "ended up reaping the same large losses as did Plaintiffs");

8   *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909, at *7 (N.D. Cal. Aug. 1, 2000) (fact that

9   "defendants were actually *harmed* by their alleged fraud often negates an inference of scienter").

10       Second, the fact that Defendants promptly shut down TIO and initiated an investigation

11   into the security vulnerabilities and breach belies the notion that it was Defendants' objective to

12   hide TIO's security problems and deceive investors.  *See Plumbers and Pipefitters Local Union*

13   *719 Pension Fund v. Zimmer Holdings, Inc.*, 2011 WL 338865, at *22 (S.D. Ind. Jan. 28, 2011)

14   ("[T]he company's investigation and willingness to recall its products bely Plaintiff's claims that

15   it was Defendants' objective to hide problems related to the Dover facility"), *aff'd*, 679 F.3d 952

16   (7th Cir. 2012); *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) ("Ordering an

17   investigation as soon as they learned [of a potentially serious problem] . . . was 'a prudent course

18   of action that weakens . . . an inference of scienter.'"); *In re H & R Block Sec. Litig.*, 527 F. Supp.

19   2d 922, 930 (W.D. Mo. 2007) ("[T]he fact of the investigation . . . negates an inference of an

20   intent to deceive the investing public."), *aff'd*, 580 F.3d 753 (8th Cir. 2009); *City of Brockton Ret.*

21   *Sys. v. Avon Prods., Inc.,* 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 29, 2014) ("[T]he fact that

22   Avon commenced an internal investigation tends to undermine any inference of scienter.").

23       Third, the fact that Defendants voluntarily disclosed their discovery of TIO's security

24   vulnerabilities in the first place, and then just three weeks later voluntarily disclosed that they had

25   found evidence of unauthorized access to TIO's network and a potential compromise of 1.6

26   million users' data, is wholly inconsistent with an intent to defraud investors regarding the

27   security of TIO's platform and users' data.  *See Rigel*, 697 F.3d at 885 (fact that defendants

28   "voluntarily publicly disclosed" adverse facts undermined scienter inference); *Webb*, 884 F.3d at

856 (fact that defendants "were forthcoming with the public" about adverse facts undermined

scienter inference); *Worlds of Wonder*, 35 F.3d at 1425 ("defendants' provision of adverse

information to the public by way of disclosure negates an inference that they acted with an

inten[t] to defraud" (quotations omitted)); *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520

(N.D. Cal. 1990) ("It is implausible that a person bent on fraud would provide adverse

information to investors" (quotations omitted)).  Indeed, if Defendants had intended to mislead

investors about the security of TIO's platform and users' data, then one would have expected

them to continue operating TIO, and to not say <u>anything</u> about TIO's security problems.

<u>Fourth</u>, as the SAC acknowledges, PayPal made detailed disclosures regarding the risk of

cyberattacks and security breaches, and expressly warned investors, among other things, that:

- PayPal's "information technology and infrastructure may be vulnerable to cyberattacks or security breaches, and third parties may be able to access [its] customers' personal or proprietary information . . . ."

- "Although [PayPal] ha[s] developed systems and processes that are designed to protect [its] data and customer data and to prevent data loss and other security breaches . . . these security measures cannot provide absolute security."

- "Any actual or perceived breach of [PayPal's] security could interrupt [its] operations, result in [its] systems or services being unavailable, result in improper disclosure of data, materially harm [its] reputation and brands, result in significant legal and financial exposure, lead to loss of customer confidence in, or decreased use of, [its] products and services, and adversely affect [its] business and results of operations."

Ex. A at 15; SAC ¶ 21.  Such "[r]obust disclosure of risks and problems further 'negates an

inference that the company acted with intent to defraud.'" *City of Roseville Emps.' Ret. Sys. v.*

*Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1142 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th

Cir. 2017); *see Worlds of Wonder*, 35 F.3d at 1425 (detailed risk disclosure negated inference of

scienter); *In re Dot Hill Sys. Corp. Sec. Litig.,* 594 F. Supp. 2d 1150, 1160 (S.D. Cal. 2008)

("Disclosing the precise risks at issue negate[s] an inference of scienter." (quotations omitted)).

Against the backdrop of the foregoing facts, all of which are fundamentally inconsistent

with fraudulent intent, any inference of scienter that one could possibly draw from the SAC's

allegations is implausible—not cogent and compelling.  *See Webb*, 884 F.3d at 856 (plaintiffs

failed to plead scienter where "allegations regarding [defendants'] behavior are not consistent

with scienter"); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1190 (D. Nev. 1999)

("Evidence indicative of a pattern of overall conduct inconsistent with scienter will dispel remote inferences of wrongdoing."). Companies "are entitled to investigate [problems] for a reasonable time, until they have a full story to reveal.'" *Pugh*, 521 F.3d at 695. Consistent with that well-settled principle, the only cogent and compelling inference that can rationally be drawn from the allegations here is that Defendants did not disclose the existence of a security breach or its magnitude in the November 10 Announcement because they were still investigating the situation and did not yet know the full extent of the problem. *See NVIDIA*, 768 F.3d at 1065 ("[A] more compelling inference is that NVIDIA did not disclose [the product defect earlier] because it was investigating the extent of the problem"). This innocent inference is confirmed by the fact that Defendants disclosed the findings of their investigation a mere <u>three weeks</u> later. *See In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 44 (1st Cir. 2014) (holding that innocent inference was more compelling where allegedly concealed scope of problem was "at best, only partially known to defendants" and "the results of [their] investigation were relatively promptly disclosed"); *Pugh*, 521 F.3d at 695 ("As the investigation continued and more information became available, the defendants disclosed it to the public . . . within a reasonable time"); *Zimmer Holdings*, 2011 WL 338865, at *22 ("The inference against scienter becomes even more cogent . . . given the fact that Defendants made a timely disclosure of the results of these investigations." (quotations omitted)).

### C. The November 10 Announcement Was Not Inconsistent With The Allegedly "True" State Of Affairs

Plaintiffs' inability to plead a strong inference of scienter is dispositive, and further analysis is unnecessary. Nevertheless, given the SAC's new allegations, Defendants respectfully urge the Court to consider the falsity element of Plaintiffs' claim anew.

The Court previously ruled that the November 10 Announcement was plausibly misleading because its disclosure of a security "vulnerability," which "triggered an investigation and review," "could plausibly have created an impression that only a potential vulnerability and not an actual breach had been discovered, and certainly not one which threatened the privacy of 1.6 million users." *Sgarlata*, 2018 WL 6592771, at *7. As demonstrated above, however, the SAC's allegations fail to substantiate Plaintiffs' claim that Defendants knew on November 10,

2017 that TIO had suffered a breach that compromised the personal data of 1.6 million users.

Moreover, as this Court has recognized, "[t]o plead falsity, a complaint must allege contemporaneous statements or conditions that are <u>necessarily inconsistent</u> with the challenged statement." *In re Leapfrog Enters., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1001 (N.D. Cal. 2016) (Chen, J.) (quotations omitted; emphasis added).  Indeed, courts in the Ninth Circuit have repeatedly held that "[s]tatements are not misleading where they are 'not necessarily inconsistent with the underlying true facts.'" *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *3 (C.D. Cal. June 6, 2008); *see, e.g., Rigel*, 697 F.3d at 881 (press release reporting results of clinical trial was not misleading even though it omitted adverse facts because "the subsequent release of more extensive information . . . was not inconsistent with the results that originally were reported"); *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (statements were not misleading because the underlying true "circumstances are not inconsistent with the statements"); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 946 (N.D. Cal. 2010) (statement was not misleading because later disclosure revealing underlying true facts was "not inconsistent with Accuray's prior representation"); *Mallen v. Alphatec Holdings, Inc.*, 2013 WL 1294640, at *7 (S.D. Cal. Mar. 28, 2013) ("'Allegations that are 'not necessarily inconsistent' with the allegedly false statement do not establish falsity.'"), *aff'd*, 607 F. App'x 694 (9th Cir. 2015); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1248 (N.D. Cal. 1998) (statement was not misleading because "none of the 'true facts' are necessarily inconsistent with the alleged representation").

Here, the allegedly concealed "true" state of affairs that was "revealed" in the December 1 Update was <u>not</u> "necessarily inconsistent" with the information included in the allegedly misleading November 10 Announcement.  To the contrary, "[t]he information in the first report [that PayPal had suspended TIO's operations due to the discovery of vulnerabilities, and that PayPal was investigating the vulnerabilities] is consistent with the information in the later report [that PayPal's investigation had identified a potential compromise of 1.6 million users' data], in that the former does not necessarily negate the later." *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *12 (N.D. Cal. Aug. 10, 2012) (statement was not misleading because it was not inconsistent with later corrective disclosure), *aff'd*, 611 F. App'x 387 (9th Cir. 2015).

**D.**   **The SAC Fails To Plead That TIO USA Or John Kunze Were The "Makers" Of Any False Or Misleading Statement**

Plaintiffs' Section 10(b) and Rule 10b-5 claim against TIO USA and John Kunze also fails for the additional reason that the SAC does not plead facts showing that these Defendants "made" any alleged misstatement. To be liable under Section 10(b) and Rule 10b-5, a defendant "must have 'made' the" alleged misstatement. *Janus Capital Grp. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011). The "maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 142. "One who prepares or publishes a statement on behalf of another is not its maker." *Id.*

Plaintiffs do not, and cannot, allege that TIO USA was the maker of the November 10 Announcements. The November 10 Press Release was issued by PayPal, TIO USA's indirect parent company, and the November 10 Website Post was made by TIO, TIO USA's direct parent company. *See* SAC ¶¶ 16, 39-40. "A subsidiary, by definition, does not control its parent corporation," *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005), so TIO USA could not have had ultimate authority over those disclosures.

Mr. Kunze likewise is not the maker of the alleged misstatements. After *Janus*, courts have held that an individual defendant is a maker of a statement only if: (i) the defendant's "signature or name appeared in the [statement] in the sense of an attribution"; (ii) the defendant orally "delivered the statements . . . himself"; or (iii) the defendant "*actually exercised* control"—as opposed to "*could have* exercised control"—"over the content of the [statement] and whether and how [it was] communicated." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015). A person who merely influenced, helped create or supplied false information for the relevant statements does not mean that such person had "ultimate authority" over the statements that were then communicated to the public. *SolarCity*, 274 F. Supp. 3d at 1007.

There is no allegation that Mr. Kunze spoke any alleged misstatement, and he did not sign, nor does his name appear in, the November 10 Press Release or Website Post. Plaintiffs also do not allege any facts showing that Mr. Kunze—a Vice President of PayPal and President of TIO USA, *see* SAC ¶ 19—had ultimate authority over the content of the Announcements,

including whether and how they would be communicated.  Instead, Plaintiffs lump him with the other Individual Defendants and allege that "[b]ecause of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PayPal, TIO, and TIO USA disseminated in the marketplace during the Class Period."  *Id.* ¶ 73; *see also id.* ¶¶ 62, 64.  Even before *Janus*, such boilerplate allegations were insufficient to plead that an individual was the maker of an unattributed corporate statement.  *See, e.g.*, *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *3 (N.D. Cal. Mar. 11, 2011) (rejecting conclusory allegations that individuals "controlled and/or possessed the authority to control the contents of [the company's] reports, press releases").  *Janus* "sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others."  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011).  In light of *Janus*, Plaintiffs' conclusory allegations regarding Mr. Kunze's purported authority are plainly insufficient.  *See, e.g.*, *Neborsky v. Valley Forge Composite Techs., Inc.*, 2014 WL 1705522, at *6 (S.D. Cal. Apr. 28, 2014) ("Plaintiff relies solely on Wilhide's role within the company to argue that the statements of Valley Forge can be attributed to him.  This is insufficient under *Janus*"); *Bruce v. Suntech Power Holdings Co. Ltd.*, 2013 WL 6843610, at *4 (N.D. Cal. Dec. 26, 2013) ("To the extent plaintiffs seek to hold King liable for [] statements by [the company] on the basis of his position as CFO, the conclusory allegations that he 'had the authority to and did control the making of [those] statements' 'by virtue of [his] responsibilities and activities as [CFO] . . .' lack the requisite specificity").

Moreover, the mere fact that Mr. Kunze was "charged with supervising the integration of TIO into PayPal" and "made statements, under his own signature, to various state level regulators and individual customers of TIO and TIO USA to inform them of the data breach, beginning in December 2017," SAC ¶ 50, says nothing about whether he had ultimate authority over the content and release of the November 10 Press Release or Website Post, *see SolarCity*, 274 F. Supp. 3d at 1007 (complaint failed to plead that Chief Revenue Officer had ultimate authority over statements about financial metrics, despite allegation that he was "in charge of 'assembling, reviewing, and approving'" the metrics, where no facts were alleged showing he "had any actual

1   authority over what was and was not included" in the statements).  *Janus* and the PSLRA require

2   factual allegations showing that Mr. Kunze had ultimate authority over the content and release of

3   the statements alleged to have been false and misleading, which are absent from the SAC.

4       **E.      The SAC Fails To Plead Loss Causation**

5           Plaintiffs' Section 10(b) and Rule 10b-5 claim must also be dismissed because the SAC

6   fails to adequately plead loss causation.  This element requires Plaintiffs to establish a causal

7   connection between the alleged misstatement and their alleged loss.  *Metzler*, 540 F.3d at 1062.

8   When, as here, a plaintiff's loss causation theory is based on market revelation of the alleged

9   fraud, *see* SAC ¶¶ 5-6, 42-46, "the complaint must allege that the defendant's 'share price fell

10   significantly after the truth became known,'" *Metzler*, 540 F.3d at 1062; *see also Mineworkers'*

11   *Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018).  And because Rule 9(b)

12   applies to the element of loss causation, *see Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774

13   F.3d 598, 605 (9th Cir. 2014), the plaintiff must plead this theory with particularity.

14           Here, the alleged "truth" that was supposedly misrepresented is the timing of Defendants'

15   discovery of a security of breach at TIO and the magnitude of the breach.  According to the SAC,

16   Defendants "fundamentally misrepresented the timeline of events.  Rather than discovering a

17   vulnerability in November, shutting down the service, and subsequently finding a breach, TIO

18   and PayPal had already discovered an actual breach that exposed all of their customers' data by

19   the time they announced the 'vulnerability.'"  SAC ¶ 35.  But the SAC does not allege any facts

20   plausibly suggesting that the market ever became aware of this alleged "truth."  The December 1

21   Update did not disclose or suggest that PayPal and TIO had already discovered an actual breach

22   on November 10, 2017 that exposed all of their customers' data.  It only disclosed that PayPal's

23   "review of TIO's network ha[d] identified a potential compromise of personally identifiable

24   information for approximately 1.6 million [TIO] customers," and that "PayPal's customers' data

25   remain[ed] secure."  Ex. E; *see also* SAC ¶¶ 42-43.  Thus, because the December 1 Update

26   cannot plausibly be read to reveal the allegedly misrepresented "true" timeline of events or that

27   the TIO breach allegedly "exposed all of [PayPal's and TIO's] customers' data," SAC ¶ 35, and

28   the SAC does not otherwise allege any specific facts in accordance with Rule 9(b) plausibly

1   suggesting that investors ever became aware of these allegedly "true" facts, Plaintiffs fail to

2   allege loss causation, *see Metzler*, 540 F.3d at 1063 (plaintiff failed to plead loss causation where

3   press releases could not "be reasonably read to reveal [the true facts allegedly misrepresented] by

4   Corinthian, and the TAC does not otherwise adequately plead that these releases did so").[4]

5        **F.**     **The Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation**

6        Section 20(a) claims may be dismissed summarily "if a plaintiff fails to adequately plead a

7   primary violation of [S]ection 10(b)." *Zucco Partners*, 552 F.3d at 990.  For the reasons

8   discussed above, Plaintiffs fail to adequately plead a primary violation of Section 10(b).  Thus,

9   Plaintiffs' Section 20(a) claim against the Individual Defendants must likewise be dismissed.

10   **IV.**    **CONCLUSION**

11        For these reasons, the SAC should be dismissed with prejudice.

12

13   Dated: March 15, 2019           ORRICK, HERRINGTON & SUTCLIFFE LLP

14                            */s/ James N. Kramer*

15                            James N. Kramer

16           Attorneys for Defendants PayPal Holdings, Inc., TIO

17           Networks ULC, TIO Networks USA, Inc., Daniel H.
            Schulman, John D. Rainey, Jr. and John Kunze

18

19

20

21

22

23

24

---

[4] To the extent Plaintiffs are relying on the "materialization of the risk" doctrine to pleading loss causation, *see* SAC ¶¶ 45, 68, such reliance is misplaced.  Under that doctrine, "a plaintiff must show that the particular misstatement or omission . . . 'concealed a particular risk,' and that the particular risk subsequently 'came to light in a series of revealing events that negatively affected the stock price.'"  *In re OSG Sec. Litig.*, 2015 WL 3466094, at *2 (S.D.N.Y. May 29, 2015) (brackets omitted).  Plaintiffs do not, and cannot, allege that Defendants concealed the "risk" of a security breach.  Indeed, Plaintiffs themselves have argued that the November 10 Announcement disclosed the "risk" of a security breach.  *See* ECF No. 64 at 8.